ALBERT W. BENNETT & others *vs.* BOARD OF ASSESSORS OF WHITMAN & another.

Plymouth.   April 2, 1968. — May 3, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Taxation,* Real estate tax: assessment. *Equity Pleading and Practice,* Decree, Suit for relief respecting assessment of taxes. *Public Officer.*

A practice of assessors of a town of assessing properties at "25% of full and fair cash value" was contrary to G. L. c. 59, § 38, and was not validated by describing such assessments as "at full and fair cash value for assessment purposes," and appropriate relief from such illegal practice was properly granted in a taxable inhabitants' suit under c. 40, § 53, even though other illegal practices of the assessors were not shown therein. [240–241]

The final decree in a taxable inhabitants' suit under G. L. c. 40, § 53, rightly ordering the assessors of a town to take action to correct an illegal practice in assessing properties at less than full and fair cash value contrary to c. 59, § 38, was modified on appeal by ordering the deletion of a paragraph requiring the assessors to file in the Superior Court "appraisals by professional appraisers presented or submitted to them for consideration, or considered by them," and as so modified was affirmed. [241–242]

BILL IN EQUITY filed in the Superior Court on February 20, 1967.

A demurrer was overruled by *Brogna,* J.  The suit was heard by *Hale,* J.

*Harold J. Betzold, Jr.,* Town Counsel, for the defendants.
*Robert J. Cotter* for the plaintiffs.

WILKINS, C.J.   Sixteen taxable inhabitants of the town of Whitman bring this bill under G. L. c. 40, § 53, against its board of assessors and its collector of taxes to enjoin the assessment, commitment, and collection of taxes other than on assessments based on the full and fair cash value of all taxable property in the town.   The defendants' demurrer for want of equity was overruled.   The case was tried before a judge of the Superior Court, who filed "Findings, Rulings and Order for Decree."   He ruled that the assessment practices of the defendant board and the assessments of taxable

property pursuant to such practices are in violation of G. L. c. 59, § 38, and of the Constitution of the Commonwealth, Part II, c. 1, § 1, art. 4; the Declaration of Rights, art. 10. He found that the same practices have remained in effect for years, and that the assessors do not intend to change those practices. From a final decree of injunction, the defendants appealed. The evidence is reported.

The judge stated, "The assessors testified, and I so find, that they attempt to assess properties at 25% of full and fair cash value. In doing this they state that they are assessing 'at full and fair cash value for assessment purposes.'" On this finding alone the assessment practices are clearly invalid. The requirement of c. 59, § 38, is that the assessors "make a fair cash valuation of all the estate, real and personal, subject to taxation." As we said in *Boston Gas Co.* v. *Assessors of Boston,* 334 Mass. 549, 566, "This means fair market value, which is the price an owner willing but not under compulsion to sell ought to receive from one willing but not under compulsion to buy. It means the highest price that a normal purchaser not under peculiar compulsion will pay at the time, and cannot exceed the sum which the owner after reasonable effort could obtain for his property."

It is a wholly illegal practice to assess land at less than 100% of full fair cash value. *Shoppers' World, Inc.* v. *Assessors of Framingham,* 348 Mass. 366, 371. See *Bettigole* v. *Assessors of Springfield,* 343 Mass. 223, 231–232; *Leto* v. *Assessors of Wilmington,* 348 Mass. 144, 146–147. Assessments at 25% of full and fair cash value are not validated by describing them as "at full and fair cash value for assessment purposes."

The defendants have made no cogent pertinent defence as to this violation, but have concentrated their arguments upon claiming that they had not transgressed in other respects which are described as improper in the cases cited *supra*. It is immaterial that other types of violation are lacking as contended by the defendants in arguing that the demurrer should have been sustained because the bill does

not sufficiently allege facts showing a deliberate and substantial violation of the requirement that property tax valuations be proportional; or as contended on the merits, that there is no finding that there is a scheme of intentional discrimination or disproportionate assessment.

Should it be argued that no unfairness results from the assessors' methods, we make two answers. First, it is nonetheless a violation of the statute. Second, the argument does not recognize the effect of exemptions granted on one ninth of the taxable real estate in the town. The judge found that there are about 4,500 separate parcels subject to assessment, of which about 500 are exempt under G. L. c. 59, § 5, clauses Seventeenth (widows) — 50, Twenty-second (veterans) — 200, and Forty-first (aged persons) — 250.

Even proportionate assessment at less than 100% of full and fair cash value increases the tax impact of exemptions to the detriment of all other taxpayers.[1] Accordingly, it is obvious that the defendant board's methods of assessment place an unreasonable burden on all other taxpayers, including the plaintiffs.

We do not consider the findings of disproportionate assessments or of constitutional violations.

The decree, for the most part, follows that in *Coan* v. *Assessors of Beverly*, 349 Mass. 575, 578–579, and is generally unobjectionable. The defendants, however, complain, and we think rightly, of paragraph 2 (c) of the decree which requires the defendants to file in the Superior Court "appraisals by professional appraisers presented or submitted to them for consideration, or considered by them." The duties required by law of the assessors may if they wish be performed by them on their own, at least in the absence of a showing that they cannot be trusted to do so. This is but another case where public officials, including municipal

---

[1] Assume a house of which the fair cash value is $10,000, and whose owner is entitled to a $2,000 exemption. If the valuation is 25% of fair cash value and the tax rate is assumed to be $50 per $1,000, the tax is imposed on $500 ($2,500 – $2,000) and is $25; but if the valuation is changed to 100% of fair cash value, even assuming that the tax rate thereby is reduced to $12.50 per $1,000, the tax is imposed on $8,000 ($10,000 – $2,000) and is $100.

officers, will be assumed to carry out their duty once the law under which they must act has been judicially declared. See *School Comm. of Gloucester v. Gloucester*, 324 Mass. 209, 220; *Times Film Corp. v. Commissioner of Pub. Safety*, 333 Mass. 62, 63; *Alves v. Braintree*, 341 Mass. 6, 12; *Oleksak v. Westfield*, 342 Mass. 50, 53. Paragraph 2 (c) of the decree must be deleted. To provide an orderly transition, the time for compliance in paragraphs 2 (a) and (e) of the decree[1] will be extended to January 1, 1970, or some other reasonable date in the discretion of the Superior Court.

The interlocutory decree overruling the demurrer is affirmed. The final decree is to be modified as indicated in this opinion, and as so modified is affirmed.

*So ordered.*

---

[1] Paragraph 2 directs the defendants to "(a) file in the Superior Court . . . a comprehensive plan for the revaluation at full and [fair] cash values . . . of all taxable property in the Town of Whitman . . . such revaluation to take effect as of January 1, 1969 . . . (e) effective January 1, 1969, and thereafter, establish assessed valuations of all taxable property in the Town of Whitman at full and fair cash values in compliance with this decree and with applicable constitutional and statutory requirements."