LAURIEN ENOS & others[1] *vs.* SECRETARY OF ENVIRONMENTAL
AFFAIRS.

Plymouth. May 4, 2000. - July 14, 2000.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Administrative Law,* Standing, Findings, Judicial review. *Massachusetts
Environmental Policy Act. Practice, Civil,* Declaratory proceeding.

Discussion of the Massachusetts Environmental Protection Act, its legislative
purpose, and its administrative scheme. [136-138]

Plaintiffs, owners of nearby properties, seeking to challenge the issuance of a
certificate of compliance by the Secretary of Environmental Affairs for the
construction of a municipal sewage treatment plant, did not have standing
as aggrieved parties to maintain their declaratory judgment action under
G. L. c. 231A, where nothing in the scheme of the Massachusetts
Environmental Protection Act suggested a legislative intent that persons
such as the plaintiffs, alleging potential property damage resulting from the
ultimate construction of the project, could seek review of the Secretary's
determination of the propriety of the environmental impact report for such
a facility [134-136,138-141]; further, where the Secretary owed no duty to
the plaintiffs that was violated and resulted in legally cognizable injuries,
an action for declaratory judgment was not appropriate [141-142].

Discussion of remedies available to citizens to address concerns about the suf-
ficiency of an environmental review process under the Massachusetts
Environmental Protection Act. [142-143]

CIVIL ACTION commenced in the Superior Court Department on
September 5, 1997.

The case was heard by *Patrick F. Brady*, J., on a motion to
dismiss.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*William L. Pardee*, Assistant Attorney General (*Edwards G.
Bohlen*, Assistant Attorney General, with him) for the defendant.

---

[1]Mary M. Enos, Margaret E. Bergiel, Raymond E. Bergiel, Carla R. Gray,
Marjorie S. Nickerson, John R. Nickerson, Lois A. Storsveen, Denis E. Stors-
veen, Mettie Whipple, Marcia A. Wall, Richard H. Wall, Elizabeth R. Holmes,
and Gregory J. Bowles.

*William S. Abbott* for the plaintiffs.

*William C. Henchy,* for Massachusetts Audubon Society, Inc., amicus curiae, submitted a brief.

GREANEY, J. The plaintiffs, fourteen property owners in Plymouth (town), brought a complaint in the Superior Court seeking a declaratory judgment, pursuant to G. L. c. 231A, that a certificate of compliance issued by the defendant, the Secretary of Environmental Affairs (Secretary), to the town concerning the construction of a sewage treatment plant is invalid. The Secretary's certificate responded to the final supplemental environmental impact report (FSEIR), filed by the town to permit the implementation of the town's "Waste Water Facilities Plan" (project). The plaintiffs' complaint also sought an order directing the Secretary to require the town to submit a revised FSEIR for further administrative review. A judge in the Superior Court allowed the Secretary's motion to dismiss the complaint on the basis that the plaintiffs lacked standing to maintain their action. The Appeals Court reversed the judgment of dismissal, concluding that the plaintiffs had standing, because "[t]he complaint on its face . . . sufficiently alleges that the plaintiffs will incur injuries and damages which fall within the zone of concern which MEPA [the Massachusetts Environmental Protection Act], and the supporting administrative process, were designed to protect," and, as a consequence, the plaintiffs could seek to enforce against the Secretary all the requirements of MEPA. *Enos* v. *Secretary of Envtl. Affairs,* 48 Mass. App. Ct. 239, 248 (1999). We granted the Secretary's application for further appellate review, and we now affirm the judgment of the Superior Court.

The background of the case is more fully set forth in the opinion of the Appeals Court. *Id.* at 239-242. We now summarize the essential facts. According to the complaint, the town operates a sewage treatment facility, including an outfall pipe that empties into Plymouth Harbor, under a permit issued by the Department of Environmental Protection (department). The permit limits the quantity of treated effluent that can be disposed through the outfall pipe to 1.75 million gallons a day.

In 1987, the department sued the town for violating the terms of the permit. In 1992, the town agreed to construct a new treatment plant and disposal facility, and this agreement was embodied in a consent decree. The town identified two sites for the plant, one known as the "Digital Site," and the other at the

Camelot Industrial Park, at the headwaters of the Eel River. Eventually, the town selected the Camelot Industrial Park site, and prepared an environmental impact report (EIR) for a facility at that site. On September 13, 1996, the Secretary issued a certificate that the town's draft EIR "adequately and properly complies with MEPA."

The town then appropriated funds for design and construction, but, in January, 1997, the project was voted down in a referendum. The town next filed a notice of project change in order to reevaluate siting alternatives, and, on April 30, 1997, the town submitted a FSEIR reaffirming the Camelot Industrial Park site as the preferred alternative. On June 16, 1997, the Secretary certified that the FSEIR adequately and properly complied with MEPA.

The plaintiffs reside in the town between 2,000 and 6,000 feet, approximately, from the site of the proposed facility. Most of the plaintiffs own property on the Eel River, and all make use of, and enjoy, the river in one way or another. The plaintiffs allege that construction and operation of the treatment facility will impair their use and enjoyment of their properties and of the Eel River, diminish the value of their properties, and impair the function of their private septic systems and wells. Two plaintiffs, Marjorie S. and John R. Nickerson, also allege that the facility will adversely affect the operation of their trout hatchery and cranberry bogs.

The complaint alleges that the FSEIR is deficient in many ways, including responding to comments; in analyzing environmental impacts; in tracing, summarizing, and quantifying environmental effects; in discussing alternatives to proposed mitigation measures; in failing to address the "no-build" alternative; and in not clearly identifying the funding, timing, and responsible party for each physical measure and management technique intended to limit negative impacts. The complaint concludes that, by certifying compliance with MEPA, the Secretary "will prevent and/or impair the use and enjoyment of property owned by each of the plaintiffs, and prevent and/or impair the plaintiffs' use and enjoyment of the Eel River watershed."[2]

1. The dispositive question is whether the plaintiffs have

---

[2]Curiously, the plaintiffs did not attach to their complaint a copy of the FSEIR or the Secretary's certificate. We think these documents would be a logical component of a complaint in a lawsuit of this type.

demonstrated that they have standing to maintain their action under G. L. c. 231A. "A party has standing when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred." *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 293 (1977). See *Bonan* v. *Boston*, 398 Mass. 315, 320 (1986) (standing requires "a definite interest in the matters in contention in the sense that [a plaintiff's] rights will be significantly affected by a resolution of the contested point"). See also *Pratt* v. *Boston*, 396 Mass. 37, 42 (1985); *Doe* v. *The Governor*, 381 Mass. 702, 704-705 (1980). We have said that "standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Pratt* v. *Boston, supra,* quoting *Valley Forge College* v. *Americans United for Separation of Church & State*, 454 U.S. 464, 486 (1982). It is settled that G. L. c. 231A does not provide an independent statutory basis for standing. *Pratt* v. *Boston, supra* at 42-43. See *Konstantopoulos* v. *Whately*, 384 Mass. 123, 127 (1981). To have standing here, the plaintiffs' interests must come within the " 'zone of interests' arguably protected by [MEPA, G. L. c. 30, §§ 61-62H] . . . . [I]t is not enough that the plaintiff[s] be injured by some act or omission of the defendant; the defendant must additionally have violated some duty owed to the plaintiff[s]." *Penal Insts. Comm'r for Suffolk County* v. *Commissioner of Correction*, 382 Mass. 527, 532 (1981), quoting L.H. Tribe, American Constitutional Law § 3-22, at 97-98 (1978).

The terms used to define a plaintiff's standing — "injury within the area of concern"; "definite interest in the matters in contention"; "violation of duty owed" — are elastic concepts that have different meanings for different parties. Plaintiffs asserting standing invariably see their interests as squarely within the disputed area of concern, and they adopt an "on a clear day you can see forever" approach to standing. Defendants, on the other hand, invariably view the issue of standing more narrowly and, unless standing on the part of the plaintiffs is definitely present, seek to insulate the governmental conduct in dispute from judicial review. In the final analysis, we must decide whether standing exists by examining several considerations, including the language of the statute in issue; the Legislature's intent and purpose in enacting the statute; the nature of the administrative scheme; decisions on standing; any adverse ef-

fects that might occur, if standing is recognized; and the available ability of other, more definite, remedies to the plaintiffs. In making our inquiry, we pay special attention to the requirement that standing usually is not present unless the governmental official or agency can be found to owe a duty directly to the plaintiffs.

(a) We first discuss MEPA, its legislative purpose, and its administrative scheme. MEPA consists of two complementary provisions. General Laws c. 30, § 61, establishes an official policy of environmental protection in the Commonwealth by directing that all State agencies "review, evaluate, and determine the impact on the natural environment of all works, projects or activities conducted by them and . . . use all practicable means and measures to minimize damage to the environment." Section 61 directs that an agency, before taking any action on a project, make substantive findings "describing the environmental impact, if any, of the project and [certifying] that all feasible measures have been taken to avoid or minimize said impact." In aid of this directive, G. L. c. 30, §§ 62-62H, establishes a process, supervised by the Secretary, for thorough consideration of the potential environmental impact of certain projects through preparation of draft and final environmental impact reports (EIRs), and submission of these EIRs to interested State agencies and to the public.

MEPA review begins when the proponent of the project files an environmental notification form (ENF), to advise the Secretary of the nature of the project. G. L. c. 30, § 62A. After a thirty-day review period, during which the Secretary consults with the agency and other interested parties, the Secretary issues a written certificate stating whether an environmental impact report (EIR) is required and, if so, the form, scope, content, and level of detail of the EIR. *Id.* The statute directs that an EIR must describe "the nature and extent of the proposed project and its environmental impact; all measures being utilized to minimize environmental damage; any adverse short-term and long-term environmental consequences which cannot be avoided should the project be undertaken; and reasonable alternatives to the proposed project and their environmental consequences." G. L. c. 30, § 62B. When an EIR, in draft or final form, is filed, the Secretary issues public notice of the availability of the report, which initiates a thirty-day public and agency review period. G. L. c. 30, § 62C. During this time, any reviewing

agency or person (or any agency with jurisdiction or with special expertise with respect to any environmental impact involved) may submit written comments to the Secretary, which then become part of the public record. *Id.*

Within seven days of the completion of the public comment period, the Secretary issues a final statement, indicating whether the EIR "in his judgment . . . adequately and properly complies with the provisions of sections sixty-two to sixty-two H, inclusive [the review procedures of MEPA]." *Id.* This certification completes the MEPA process. The record created during MEPA review (any draft and final EIRs, all public and agency comments, and the Secretary's certification or, presumably, failure to certify) provides the information for the agency's evaluation and subsequent § 61 findings. See *Marlow* v. *New Bedford*, 369 Mass. 501, 505 (1976); *Boston* v. *Massachusetts Port Auth.*, 364 Mass. 639, 660 (1974).

The Legislature revised MEPA in 1978 to delegate responsibility for supervision of the review process to the Secretary. See St. 1977, c. 947. The revised statute's stated purpose is to "to immediately expedite environmental approvals and rules and regulations thereof under the laws regulating environmental policy in the commonwealth." Preamble to St. 1977, c. 947. While the substantive concerns of MEPA, to identify and mitigate environmental effects of a project prior to its implementation, remained unchanged, the Legislature unmistakably intended that the MEPA review process expedite action on these matters, by placing final EIR determinations "in the hands of a disinterested public official with expertise in environmental matters." *Cummings* v. *Secretary of Envtl. Affairs*, 402 Mass. 611, 617 (1988).

Our examination of MEPA's administrative scheme discloses that § 61's requirement of findings is the statute's principal enforcement component, because an agency may not act (in this case, the department may not issue the required permit) without them. See *Boston* v. *Massachusetts Port Auth.*, *supra* at 660 ("§ 61 gives assurance that the requirements of [the former] § 62 will receive more than mere lip service"). The MEPA review process, on the other hand, concluding with the Secretary's certification of a final EIR, does not itself result in an agency's final approval or disapproval of a project.

The MEPA framework contemplates that persons such as the plaintiffs may play a role in the process, by submitting written

comments or participating in any public or informational hearings that, by regulation, may be held. See 301 Code Mass. Regs. § 11.08(3) (1993).[3] An agency's § 61 findings, presumably, will reflect public concerns and, hopefully, result in agency action that avoids or minimizes adverse environmental consequences. It is through this somewhat democratic process that full disclosure of the environmental impact of a project may be made, to ensure a thorough environmental review of a project during its early planning stages.

We discern nothing in the statute's language, purpose, or administrative scheme, however, to suggest a legislative intent that persons such as the plaintiffs should be able to seek judicial review of the Secretary's determination of what constitutes a proper EIR.[4] Nor do we find a suggestion that the Secretary's certification (of even an improper EIR) might violate some duty owed to these particular plaintiffs. Although we agree generally with the Appeals Court that "MEPA's area of concern . . . is the protection of the environment from damage caused by projects having an environmental impact," *Enos* v. *Secretary of Envtl. Affairs*, 48 Mass. App. Ct. at 246, this characterization is far too broad for our purposes. To grant standing based on MEPA's ultimate goal of the protection of the environment would allow suit in almost every project within MEPA's jurisdiction, based on generalized claims by plaintiffs of injury such as loss of use and enjoyment of property.

The plaintiffs assert in their brief that the lack of vital information in the inadequate FSEIR will significantly increase the risk of harm to their properties and to the Eel River watershed, and so if the project proceeds as designed, they will suffer *"precisely* the kind of harm that MEPA is intended to prevent" (emphasis original). The general concept of environ-

---

[3]MEPA's regulations were revised in 1998. The language of the provision referred to in the text was revised, but 301 Code Mass. Regs. § 11.08(3) (1998) still provides that public hearings and informational meetings may be held.

[4]Section 62H restricts challenges to the Secretary's decisions to actions (1) for which timely notice of intention is provided to the Secretary; (2) that are timely commenced; and (3) that raise issues previously raised at the appropriate point in the administrative review procedure. Although the language of § 62H implies a legislative assumption that judicial review of the Secretary's decisions is available, it does not by itself operate to create standing for parties in the plaintiffs' position. See *Cummings* v. *Secretary of Envtl. Affairs*, 402 Mass. 611, 618 (1988).

mental protection does not extend to allowing the plaintiffs to challenge the Secretary's action.[5] While the MEPA review process is unquestionably concerned with ensuring that relevant information is gathered before a project is allowed to proceed, we do not agree that this concern permits the plaintiffs, whose injuries flow from the ultimate construction of the project by the town rather than from the Secretary's certification, to challenge the Secretary's action.[6] To permit such a challenge would result in substantial delay, in direct frustration of the stated purpose of MEPA review, which is to expedite environmental approvals. As was stated in *Cummings* v. *Secretary of Envtl. Affairs, supra* at 617, "sound environmental policy does not necessarily require the availability of judicial review of the Secretary's determination that no EIR is required [or that an EIR complies with the regulations]." While the MEPA process contemplates that the plaintiffs' objections to the FSEIR be considered during the public comment period, the statute does not disclose a legislative intent that the plaintiffs may challenge the Secretary's decision to certify the FSEIR.

(b) This conclusion comports with case law in this area, which demonstrates a decided reluctance to allow plaintiffs to challenge decisions of the Secretary under MEPA. In *Cummings* v. *Secretary of Envtl. Affairs, supra* at 618, we held that neither G. L. c. 214, § 7A, nor G. L. c. 30, § 62H, confers subject matter jurisdiction for a suit challenging the Secretary's discretionary decision not to require an EIR. Our decision was based in part on the determination that MEPA's statutory scheme does

---

[5]The plaintiffs allege that they have already been injured in the form of diminished property values and increased legal expenses, as the immediate result of the Secretary's certification. The matter of property values of land near a proposed project, or expenses incurred in bringing a lawsuit to stop a project (which the plaintiffs claim for the first time on appeal), cannot fairly be said to fall within even the most expansive characterization of MEPA's area of concern.

[6]We acknowledge that the plaintiffs' alleged injuries are enough to show an actual controversy. See *Villages Dev. Co.* v. *Secretary of the Executive Office of Envtl. Affairs*, 410 Mass. 100, 106 (1991) ("A property owner is involved in an actual controversy within the meaning of G. L. c. 231A, § 1, when . . . the use of his property is prevented or impaired by an administrative decision which the owner maintains is invalid"). The question of standing in this context, while closely related to the existence of an actual controversy, asks whether the injuries claimed fall within the area of concern that the statute was enacted to protect, or, stated another way, whether the statute creates a right in the particular plaintiff to redress those injuries.

not envision challenges to a decision by the Secretary, "a disinterested public official with expertise in environmental matters," particularly "in light of the potential unfairness and social and economic loss that may result from the delay inherent in litigation." *Id.* at 617. See *Walpole* v. *Secretary of the Executive Office of Envtl. Affairs*, 405 Mass. 67, 70-71 (1989); *Boston Invs. Ltd.* v. *Secretary of Envtl. Affairs*, 35 Mass. App. Ct. 391, 394-395 (1993). If a challenge cannot be maintained to the Secretary's decision that an EIR is not required, it seems only logical that a challenge cannot be maintained when an EIR is required and approved, even if the litigation mechanism mounting the challenge by the plaintiffs is resort to G. L. c. 231A.

We have allowed a project *proponent* to seek a declaratory judgment challenging the Secretary's determination of the scope of a project's required EIR. See *Villages Dev. Co.* v. *Secretary of the Executive Office of Envtl. Affairs*, 410 Mass. 100, 106 (1991). There, we concluded that Villages had standing because "the Secretary's decision directly affected the rights of Villages to expand access to its project. Villages could incur legally cognizable injury, by way of delay and considerable extra expense, if the Secretary was wrong and his decision went unredressed. A plaintiff, in these circumstances, has standing to seek declaratory relief." *Id.*

The plaintiffs argue that the *Villages* decision, and our decision in *Walpole* v. *Secretary of the Executive Office of Envtl. Affairs, supra*, support their claim of standing. In *Walpole, supra* at 69, the Massachusetts Water Resources Authority filed a draft report identifying twelve locations as potential sites for permanent sludge management activities, three of which were within the town of Walpole. We concluded that the town could not bring a declaratory judgment action to challenge the Secretary's certification that the draft report "adequately and properly" complied with MEPA, because the certified report was merely an interim step in the administrative process and, therefore, the town had not exhausted its administrative remedies. *Id.* at 71-72.

It is true that language in *Walpole* suggests that the town might be able to challenge the Secretary's ultimate certification of a final EIR. See *id.* ("A declaratory judgment action is premature until the secretary has concluded the administrative process by taking final action, such as by certifying the

adequacy of the final environmental impact report for the project"). This language, however, was not meant to establish a broad rule that would allow anyone alleging potential property damage from a proposed project to use G. L. c. 231A to challenge the Secretary's certification of that project's final EIR. Like the project proponent in *Villages*, the town was a major player in the MEPA administrative process. A decision to locate a project on land owned by the town would immediately impair the town's rights. Further, the Secretary's decision subjected the town to "substantial expense[s]" of hiring consultants to help it participate in required environmental impact studies. *Id.* at 71. Although we did not decide the issue of standing in *Walpole*, we think that consideration of both the nature of the town's interests and its alleged injury might properly lead a court to conclude that the town, like the project proponent in *Villages*, had standing to maintain a declaratory judgment action challenging a decision made by the Secretary concerning a proposed project's EIR. See *Villages Dev. Co.* v. *Secretary of the Executive Office of Envtl. Affairs*, *supra* at 106. The plaintiffs, however, may not reasonably be compared to either a project proponent or a town facing the construction of a project within its limits. As a result, there is nothing in the case law that advances their position.

(c) A holding that the plaintiffs are aggrieved parties would greatly expand the scope of the Declaratory Judgment Act, G. L. c. 231A. Although the standing requirements under G. L. c. 231A should be liberally construed, there are limits to the matters that can be heard in an action for a declaratory judgment. *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 293 (1977). To allow the plaintiffs to pursue their lawsuit, in the absence of a duty owed to them by the Secretary, which was violated and resulted in legally cognizable injuries, could turn G. L. c. 231A into a roving entitlement for allegedly aggrieved plaintiffs to seek judicial review of action by a public official or an agency that potentially impairs any asserted rights or privileges of the plaintiffs. The net result could mean that much needed public projects which, like the project in this case, often take several years to wind their way through an administrative process, would be unnecessarily delayed by lawsuits brought by landowners near the project seeking redress for injuries not

within the ambit of the alleged duty owed to them by the public official or agency charged with administration of the statute.[7]

(d) We also disagree with the plaintiffs' claim that, if standing is denied, the Secretary's improper certification of the town's FSEIR may be virtually immune from judicial review. The Secretary suggests in his brief that the plaintiffs may bring suit directly against the town under G. L. c. 214, § 7A, alleging that the town's improperly obtained FSEIR may constitute "damage caused or about to be caused," in violation of an environmental statute. See *Cummings* v. *Secretary of Envtl. Affairs*, 402 Mass. 611, 616 (1988); *Boston* v. *Massachusetts Port Auth.*, 364 Mass. 639, 646 (1974). Although the Secretary would not be a proper party to proceedings under § 7A, an action may lie to seek revocation of the approval of the FSEIR and the submission of a revised report. See *Boston Invs. Ltd.* v. *Secretary of Envtl. Affairs*, *supra* at 395-397. Further, if an action under § 7A is properly brought, "public officials [like the Secretary] . . . will be assumed to carry out their duty once the law under which they must act has been judicially declared." *Id.* at 397, quoting *Bennett* v. *Assessors of Whitman*, 354 Mass. 239, 241-242 (1968), and cases cited. It is, therefore, not to be expected that, if the court found failures in the FSEIR, the Secretary would thumb his nose at the court's determination that a revised EIR is required.

Additionally, the Secretary suggests that the plaintiffs may be able to challenge the sufficiency of the FSEIR when the town applies for the project's discharge permit from the department, a final approval required by the Clean Waters Act. See G. L. c. 21, § 43. Pursuant to G. L. c. 21, § 46A, "[a]ny person aggrieved" by a permit granted under the Act may appeal the department's decision to grant the permit.[8]

The plaintiffs therefore appear to have alternative remedies

---

[7]We reject the plaintiffs' assertion that G. L. c. 214, § 7A, creates a legal interest in the protection of the environment that confers standing in this action under G. L. c. 231A. We also reject the plaintiffs' claim that their constitutional right to clean air and clean water, as provided in art. 49 of the Amendments to the Massachusetts Constitution, entitles them to standing to challenge the Secretary's decision.

[8]The Secretary notes that judicial review may also be available with respect to a finding by the responsible agency (in this case, the department), pursuant to § 61, "that all feasible measures have been taken to avoid or minimize [environmental] impact." We take no position on whether the plaintiffs would have standing to bring such an action.

available to address their concerns that the Secretary's review process may have been insufficient, and that the process may have, in some as yet unspecified ways, failed to address certain aspects of the project's over-all environmental consequences.[9] Cf. *St. Botolph Citizens Comm., Inc.* v. *Boston Redevelopment Auth.*, 429 Mass. 1, 10 (1999) (examining interpretations of related urban renewal statutes and proceedings and concluding that the Legislature wanted challenges to project by aggrieved persons to be made at the endpoint of the process and not at interim stages).

The considerations discussed — involving the text and workings of the statute, the case law interpreting it, the potential adverse consequences of allowing use of G. L. c. 231A in the manner sought by the plaintiffs, and possible other remedies to protect the plaintiffs' rights — satisfy us that the Secretary's motion to dismiss was properly allowed.

*Judgment affirmed.*

ABRAMS, J. (concurring). I adhere to my dissent in *Cummings* v. *Secretary of Envtl. Affairs*, 402 Mass. 611, 619-629 (1988) (Abrams, J., dissenting). See *Walpole* v. *Secretary of the Executive Office of Envtl. Affairs*, 405 Mass. 67, 73 (1989) (Abrams, J., concurring). I think the court errs in not revisiting *Cummings*. I conclude here that the Superior Court properly has jurisdiction under G. L. c. 214, § 7A. See *Cummings* v. *Secretary of Envtl. Affairs*, *supra* (Abrams, J., dissenting).[1]

The language and history of MEPA support a conclusion that the Secretary's determination is reviewable in the Superior

---

[9]The plaintiffs assert that the opportunity to challenge the FSEIR at a later date is of dubious value because critical issues to be considered under MEPA (for example, alternative locations for the facility, consideration of the no-build alternative, and alternative measures) will by then be moot. We disagree. The plaintiffs' concerns focus on the negative environmental impact of the project on their properties and the town's failure properly to consider other alternatives. We see no sound reason why these concerns would not be properly addressed in a § 7A suit against the town, which can be brought at any time on a sufficient showing of environmental damage, or in a suit against the department, pursuant to G. L. c. 21, § 43, when and if a permit is applied for under the Clean Waters Act.

[1]I agree with the court's conclusion, *ante* at 138-141, that the Superior Court does not have jurisdiction in this matter under G. L. c. 231A. Hence, I concur.

Court. *Cummings* v. *Secretary of Envtl. Affairs, supra* at 619-624 (Abrams, J., dissenting). Given this legislation and legislative history, the Superior Court has jurisdiction under G. L. c. 214, § 7A, where there is "an allegation that 'damage to the environment is occurring or is about to occur,' and it [is] further . . . alleged that such damage 'constitutes a violation of a statute . . . or regulation the major purpose of which is to prevent or minimize damage to the environment.' " *Cummings* v. *Secretary of Envtl. Affairs, supra* at 624-625 (Abrams, J., dissenting), quoting *Boston* v. *Massachusetts Port Auth.,* 364 Mass. 639, 645 (1974). I adhere to my belief that an improper determination by the Secretary constitutes "damage to the environment." *Cummings* v. *Secretary of Envtl. Affairs, supra* at 625 (Abrams, J., dissenting), citing *Boston* v. *Massachusetts Port Auth., supra* at 645-647.

Although "the issuance by the Secretary of a final certificate of full compliance with MEPA constitutes final agency action by the Secretary," *Enos* v. *Secretary of Envtl. Affairs,* 48 Mass. App. Ct. 239, 243-244 n.9 (1999), citing *Walpole* v. *Secretary of the Executive Office of Envtl. Affairs, supra* at 72, the court's decisions to date effectively foreclose all avenues of redress for affected citizens seeking judicial review of the Secretary's substantive decisions under MEPA. See *Enos* v. *Secretary of Envtl. Affairs, supra; Cummings* v. *Secretary of Envtl. Affairs, supra* at 619-629 (Abrams, J., dissenting); *Walpole* v. *Secretary of the Executive Office of Envtl. Affairs, supra* at 73 (Abrams, J., concurring). The result of the court's opinions is to exempt the Secretary's actions from judicial review by affected citizens. The only person left to bring suit is the developer — the person least likely to make an environmental challenge, an extraordinary outcome.