Tuttman, Kathe M., J.
Plaintiff, Combined Properties, Inc. (“CPI”) filed this appeal pursuant to G.L.c. 231 A, §§1 and 2, from a decision by the Secretary of Environmental Affairs for the Commonwealth of Massachusetts (“Secretary”) issuing a Certificate of the Secretary of Environmental Affairs on a Notice of Project Change under the Massachusetts Environmental Policy Act, G.L.c. 30, §§61-62H (“MEPA”), and its implementing regulations at 301 CMR 11.0 (the “MEPA Regulations”), stating that an environmental impact report (“EIR”) is not required with respect to recently proposed changes to a project known as River’s Edge (formerly known as Telecom City) proposed by defendants Mystic Valley Development Corporation (“MVDC”) and Preotle, Lane and Associates Ltd. (“PLA”). Plaintiff seeks declaratory judgments that the Secretary erred in determining that an EIR is not required on this Notice of Project Change, that the Certificate issued by the Secretary under MEPA and the MEPA Regulations is null and void, and that the defendants MVDC and PLA must submit an EIR addressing traffic matters implicated by the proposed project changes at issue.
This matter came before the Court for hearing on two Motions to Dismiss pursuant to Mass.R.Civ.P. 12(b)(1) and 12(b)(6), alleging lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, one filed jointly by defendants MVDC and PLA, and a second filed by defendant Secretary. By agreement, these motions were consolidated for hearing. For the reasons stated below, the defendants’ Motions to Dismiss are ALLOWED.
BACKGROUND
The following facts are summarized from the complaint, supplemented with information contained in the attachments to the defendants MVDC and PLA’s Affidavit in Support of Motion to Dismiss.[1]1 note that the relevant facts are essentially undisputed.
In 1996, defendant MVDC proposed a project for new office/research and development space, originally conceived as a modern telecommunications center called “TeleCom City,” to be developed in several phases on a 207-acre industrial site located around the Malden River in Malden, Medford and Everett, Massachusetts. The project was later renamed “River’s Edge.” Plaintiff CPI is affiliated with various entities (“CPI Affiliates”) that own real property in Malden in the area encompassed by the project as a whole, and abutting Phase I of the project. Phase I of the project is located exclusively within Medford and Everett, along the west side of the Malden River, separated from plaintiffs property by a creek.
Pursuant to MEPA and the MEPA regulations, MVDC submitted an Environmental Notification Form (“ENF”) for the project. In 1999, the Secretary’s prede *645 cessor issued a certificate on the ENF stating that the project required the preparation of an EIR, and a separate certificate requiring an EIR for Phase I and an Area-Wide Permitting Strategy Report.
Over the years, the project underwent a series of modifications. In 2000, a Notice of Project Change (NPC) was submitted by MVDC and PLA concentrating Phase I of the project on contiguous parcels of land in Medford (and a very small area of land in Everett) along the Malden River. After this NPC was filed, MVDC and PLA filed the Phase I EIR and the Area-Wide Permitting Strategy Report required by the Secretaiy’s 1999 MEPA certificate. In March 2001, the Secretaiy’s predecessor issued a certificate stating that the EIR “adequately and properly” complied with MEPA and its implementing regulations. In December 2004, a second NPC was issued describing the inclusion of the Tufts University Boathouse within Phase I of the project. In February 2005, the Secretaiy’s predecessor issued a certificate determining that no further MEPA review was required as a result of this change.
The NPC at issue in this case was filed in December 2005. It involved the proposed addition of200 residential units and an amenities building to Phase I of River’s Edge. The residential units replaced one of four office/research buildings. An additional 296 parking spaces were added to the project, and previous deck and surface parking was reorganized into four parking garages.
In the review process for this proposed project change, the Secretaiy considered comments from several sources, including CPI. CPI’s concerns related to the potential traffic impact of the reconfigured Phase I project. In particular, CPI alleged that the NPC relied on stale traffic data and faulty assumptions about the availability of “trip credits” based on the supposed removal of pre-existing land uses from the project area and failed to adequately consider the impact of 200 residential units on roadway capacity and traffic flow.
In February 2006, the Secretaiy issued his certificate on the NPC and determined that no further EIR was required for the Phase I project as potential impacts of the project change could be addressed through state and local permitting processes.[2] In the section captioned “Transportation,” the certificate includes a detailed analysis of the traffic concerns CPI raised in its comments. CPI then filed this appeal alleging, inter alia, that the Secretaiy erred in his determination that no further EIR was required for the Phase I project.
DISCUSSION
The outcome of this case turns on whether plaintiff CPI has demonstrated that it has standing to maintain its action seeking declaratory judgments under G.L.c. 231A. “(U)nder a rule 12 (b)(1) motion, ¿plaintiff bears the burden of proving jurisdictional facts ...” Williams v. Episcopal Diocese of Massachusetts, 436 Mass. 574, 577, n.2 (2002), and cases cited. CPI must show that it sustained “an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred.” Commonwealth v. Enos, 432 Mass. 132, 135 (2000), citing Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 292 (1977). CPI can only sustain this burden by demonstrating that:
1. its interests come within the “zone of interest” protected by MEPA; and
2. the defendants owe the plaintiff a duty that has been violated.

Enos, supra.

Without question, CPI has demonstrated that its interests come within the appropriate “zone of interest,” as transportation, parking and traffic concerns are areas designated for review under MEPA regulations (see 301 CMR §11.03), and are areas that were in fact addressed in detail in the Secretaiy’s certificate issued on the 2005 NPC.
CPI has not, however, demonstrated a violation of a duty owed to it by the defendants. CPI asserts that its status as an owner of property adjacent to Phase I, property which is within the area of another potential future phase of the project, makes its interests in the MEPA administrative process so significant that it is owed a duty and therefore it has standing to challenge the Secretaiy’s determination. In support of this argument, CPI cites two cases: The Villages Development Company, Inc. v. Secretary of the Executive Office of Environmental Affairs, 410 Mass. 100 (1991), and Town of Walpole v. Secretary of the Executive Office of Environmental Affairs, 405 Mass. 67 (1989), as that case is construed by Enos, supra.
In Villages, the plaintiff was a private corporation owning a tract of land in Brewster that it had developed into a planned condominium development and multi-use community. Due to dangers resulting from heavy traffic on the closest access road connecting the project to Route 6A, Villages and town officials agreed to create a new access road. Villages was found to have standing to challenge an adverse decision of the Secretary relating to Villages’ construction of the new access road because it was the proponent of the project.
In Walpole, the town sought to challenge a determination by the Secretary relating to MEPA certification for a Massachusetts Water Resources Authority project. Although the issue of standing was not decided because the town had not exhausted its administrative remedies, the Court suggested that the town might have standing to challenge the Secretaiy’s decision at a later point in the process, since the proposed project would be located on land owned by the town. As the Enos court noted in construing Walpole, “The nature of the town’s interests and its alleged injury might *646 properly lead [to a finding of standing].” Enos, supra at 141.
Unlike the plaintiffs in Villages and Walpole, CPI is neither the proponent of the project nor the owner of the properly where the project is located. In fact, CPI’s position is more closely analogous to that of the plaintiffs in Enos. There, fourteen property owners in Plymouth sought to challenge a decision of the Secretary issuing a certificate of compliance for the construction of a sewage treatment facility in the town, alleging that the construction and operation of the facility would interfere with their use and enjoyment of their own properties, many of which were on the Eel River, as well as their use and enjoyment of the river itself. The plaintiffs all lived within approximately 2,000 and 6,000 feet of the site of the proposed facility.
In its decision that the landowners in Enos did not have standing to challenge the Secretary’s determination, the Court distinguished the plaintiffs in both Villages and Walpole as “major players” in the MEPA administrative process. Id. at 141. Villages was a “major player” entitled to standing because “the Secretary’s decision directly affected the rights of Villages to expand access to its project. Villages could incur legally cognizable injury, by way of delay and considerable expense, if the Secretary was wrong and his decision went unredressed.” Id. at 140, quoting Villages, supra at 106. The town of Walpole was a “major player” because “[a] decision to locate a project on land owned by the town would immediately impair the town’s rights.” Enos, supra at 141.
Because it is neither a project proponent nor an owner of land encompassed by the project, but rather an owner of adjacent property, CPI’s claim that it is a “major player” within the meaning of Enos must fail. The concept of “major player” has not been extended to confer standing on a class of individuals or entities broad enough to include adjacent property owners, even those whose property may be utilized for a later phase of a project. Like the plaintiffs in Enos, there is no potential impact on CPI’s property as a result of Phase I of the project that is different from any potential impact on members of the public in general. While it is possible that property owned by CPI may come within the ambit of the River’s Edge development at some point in the future, presently, it does not. CPI urges this Court to adopt the same “anti-segmentation” approach outlined in the MEPA Regulations for determining whether a project is subject to MEPA jurisdiction in order to support its position that CPI’s ownership of property within a potential future phase of the River’s Edge development is a sufficient basis to find standing. Given both the original plans to implement this project in phases and the actual history of the development process to date, such an approach would not be appropriate, particularly in light of the fact that, should later phases of the project be undertaken, additional EIR’s will be required.
While “[t]he MEPA framework contemplates that persons such as the [plaintiff] may play a role in the process [of environmental review], by submitting written comments or participating in any public or informational hearings that may, by regulation, be held,” Id. at 137-38, concepts of environmental protection inherent in MEPA and its regulations do not permit CPI to challenge the Secretary’s decision in this case. As the Enos court stated: “To grant standing based on MEPA’s ultimate goal of the protection of the environment would allow suit in almost every project within MEPA’s jurisdiction, based on generalized claims by plaintiffs of injury such as loss of use and enjoyment of property.” Id. at 138.
ORDER FOR JUDGMENT
For the foregoing reasons, it is hereby ORDERED that the defendants’ Motions to Dismiss are ALLOWED. Accordingly, the plaintiffs Appeal pursuant to G.L.c. 231 A, §§1 and 2 is DISMISSED.

 Consideration of documents and other materials outside the pleadings is appropriate on a motion under Mass.R.Civ.P. 12(b)(1), and will not mandate conversion of the motion into one for summary judgment. See Callahan v. First Congregational Church of Haverhill 441 Mass. 699, 709-10 (2004); Williams v. Episcopal Diocese of Massachusetts, 436 Mass. 574, 577, n.2 (2002).

It should be noted that, should later phases of the River’s Edge project be undertaken, further EIRs would be required. See March 2, 2001 “Certificate of the Secretary of Environmental Affairs on the Phase I Environmental Impact Report and the Area-Wide Permitting Strategy Report,” Exhibit 4 to “Affidavit of Robert E. McDonnell in Support of Defendants’ Motion to Dismiss.”