Fabricant, Judith, J.
INTRODUCTION
This action arises from the proposed Westwood Station project, a large mixed-use development project proposed for a location in Westwood on the Canton line. The Town of Canton, concerned about traffic impact of the project, seeks judicial review of a determination of the Secretary of Energy and Environmental Affairs (“the Secretary”) certifying a Final Environmental Impact Report for the project, and of a finding made by the Commissioner of the Massachusetts Highway Department (“MassHighway”). Cabot, Cabot & Forbes (“CCF”), the project proponent, contends that Canton’s complaint is untimely, and seeks either dismissal or summary judgment on that ground. After hearing, and review of all materials, the motion will be allowed, and the complaint will be ordered dismissed as to all defendants.
BACKGROUND
The record before the Court provides the following factual and procedural background. The project as proposed provides for the use of Dedham Street as one of two primary means of automotive access to the site, with a northbound exit ramp from Interstate 95 onto Dedham Street to be constructed. Dedham Street runs through Canton, crossing bridges over MBTA tracks and the Neponset River. Use of Dedham Street as proposed will increase traffic on the bridges and in the surrounding area. Construction of the new exit ramp will require a permit from the Massachusetts Highway Department.
On or about January 17, 2007, CCF filed a Draft Environmental Impact Report (“DEIR”) with the Secretary. The draft acknowledged the traffic impact of the project on Dedham Street, and proposed mitigation. Canton commented on this aspect of the DEIR, as did MassHighway and the Executive Office of Transportation and Public Works (“EOTj. The Secretary directed CCF to provide additional investigation and analysis of the issues raised and propose a solution. Thereafter, Canton participated in consideration of the issues in the context of a steering committee convened by EOT.
On September 17, 2007, CCF submitted the Final Environmental Impact Report (“FEIR”), pursuant to G.L.c. 30, §61 and 62 A-H. Canton again commented, criticizing the FEIR as providing inadequate traffic mitigation for Dedham Street. The Secretary issued an FEIR Certificate, pursuant to G.L.c. 30, §62C, dated November 1, 2007, certifying that the FEIR adequately and properly complied with the Massachusetts Environmental Policy Act (“MEPA”) and regulations thereunder. The certificate set forth conditions, including specified traffic mitigation for Dedham Street. It also included a list of permits and notices of various kinds that would or might be required before work could proceed; on the list was a sewer connection permit from the Department of Environmental Protection. On November 21, 2007, Canton filed written notice of its intent to commence an action for judicial review of the Secretary’s certification of the FEIR, pursuant to G.L.c. 30, §62H.
On January 24, 2008, the Department of Environmental Protection issued a Sewer Connection Permit, accompanied by a finding under G.L.c. 30, §61, as forecasted in the Secretary’s certificate of approval of the FEIR. This was the earliest issuance of any of the permits listed in the Secretary’s certificate. It was not, however, the earliest issuance of any permit for the project; that had occurred several weeks earlier, on December 13, 2007, when the Department of Environmental Protection issued a “Beneficial Use Determination,” pursuant to 310 C.M.R. §19.00, authorizing the use of paint-coated crushed rubble as fill for site preparation. DEP did not publish notice of the issuance of either of these permits, nor did it notify Canton directly; Canton does not suggest that any rule or policy required it to do so.
On or about September 25, 2008, MassHighway issued its finding pursuant to G.L.c. 30, §61, based on the FEIR certified by the Secretary. The finding recites that the project proponent will apply for permits for road work from Mass Highway as well as from the Towns of Canton and Westwood. It outlines the traffic impact the project will have, and the mitigation measures planned as set forth in the FEIR, as well as MassHighway’s own plans for roadway improvements in the affected areas. It concludes with the statutorily required finding that “with implementation of the mitigation measures described above, all practicable means and measures will be taken to avoid or minimize adverse traffic and related impacts to the environment.”
Canton filed this action on October 24, 2008, and amended its complaint on October 31, 2008. The amended complaint sets forth two counts, each of which challenges both the Secretary’s certification of the FEIR and MassHighway’s findings. Count I alleges that both fail to require adequate traffic mitigation, and count II alleges that both fail to consider reasonable alternatives. The complaint seeks injunctive relief to prevent the issuance of a permit for a northbound exit ramp from interstate 95 onto Dedham Street unless certain alternatives are considered and certain mitigation measures are required, and a declaration that the issuance of such a permit would violate MEPA. CCF contends that both counts of the complaint are time-barred under G.L.c. 30, §62H, and *380 must be dismissed on that ground pursuant to Mass.R.Civ.P. 12(b)(1).
DISCUSSION
General Laws c. 30, §62H, provides a mechanism for judicial review of the Secretary’s certification of an FEIR, subject to three requirements. First, a person “intending to commence an action or proceeding alleging that a final environmental impact report fails to comply” with statutoiy requirements must give notice within sixty days of issuance of the Secretary’s certification. Second, the action “shall commence no later than thirty days following the first issuance of a permit or grant of financial assistance by an agency for a private project. . .” Third, “the matter complained of’ must have been “raised at the appropriate point in the administrative review procedures.” CCF’s contention here is that the first issuance of a permit was either the December 13, 2007, beneficial use determination, or the January 24, 2007, sewer use permit, so that the statutoiy limitations period had run not later than February 25, 2007, some eight months before Canton filed suit. CCF focuses on the sewer use permit because it was presaged in the FEIR certification; its legal theoiy would apply as well to the beneficial use determination. [1]
The Supreme Judicial Court has described c. 30, §62H as a “statute of limitations.” Cummings v. Secretary of Environmental Affairs, 402 Mass. 611, 613 (1988); see also Walpole v. Secretary of the Executive Office of Environmental Affairs, 405 Mass. 67, 70 (1989). The triggering event for the thirly-day statutoiy limit is the “first issuance of a permit.” The short time limit, and the early trigger, serve the recognized statutory purpose “to immediately expedite environmental approvals,” so as to avoid the “potential unfairness and social and economic loss that may result from the delay inherent in litigation.” Cummings, supra, at 617, quoting St. 1977, c. 947; see Hull v. Massachusetts Port Authority, 441 Mass. 508, 516-17 (2004).
Where statutory language is plain and unambiguous on its face, the Court’s obligation is to apply it according to its terms. See, e.g., Pyle v. School Comm. of S. Hadley, 423 Mass. 283, 285 (1996). Here, the pertinent language is "the first issuance of a permit.” The statute makes no reference to publication or receipt of notice of a permit; rather, it runs the limitations period from issuance of a permit, without regard to any notice. Compare G.L.c. 30A, §14 (“action shall ... be commenced . . . within thirty days after receipt of notice of the final decision”). Nor does the statute qualify its reference to issuance of a permit, such as by referring to a particular type of permit, or to a permit authorizing work related to “the matter complained of.” Rather, the statute refers, plainly and simply, to issuance of “a permit.” The effect of this provision, applied according to its terms, is that the limitations period had run months before this action was filed.
Canton attempts to avoid this conclusion by arguing that neither the beneficial use determination nor the sewer use permit was the “first issuance of a permit” for purposes of its action, for two reasons: it had no notice of either, and neither conferred on it standing to sue, since neither affected its interest in the impact of the project on traffic. On the issue of notice, Canton has identified no requirement of notice, and no case reading this or similar statutoiy language in such a manner as to make the starting of the limitations period contingent on notice. To the con-traiy, in the analogous context of zoning appeals the Supreme Judicial Court has applied similar language according to its plain terms, enforcing the statute of limitations strictly, and placing on the party seeking review the burden of inquiiy, even in an instance where that party was entitled to but did not receive notice. See Cappuccio v. Zoning Board of Appeals of Spencer, 398 Mass. 304, 313 (1986) (“It is not a denial of due process to impose upon the plaintiffs the responsibility to inquire periodically of the town clerk whether the board’s decision has been filed”).
Like the plaintiff in Cappuccio, supra, Canton was in a position to obtain notice of the issuance at least of the sewer use permit, because the FEIR expressly identified that permit as one that would or might be necessary. In light of the short statutoiy limitations period, Canton could be expected to anticipate issuance of that permit, and to take steps to make sure that it would become aware of it promptly. Such steps could have included, for example, properly timed public records requests.
Canton’s second theoiy rests on language in two decisions of the Supreme Judicial Court, Enos v. Secretary of the Executive Office of Environmental Affairs, 432 Mass. 132, 142 (2000), and Sierra Club v. Commissioner of Department of Environmental Management, 439 Mass. 738, (2003). Neither of these cases addressed any statute of limitations issue, or interpreted the statute in issue here, c. 30, §62H. Nor does anything in either decision indicate that the plaintiffs in either case had sought to sue more than thirty days after the first issuance of a permit.
The issue in Enos was whether the plaintiffs, a group of owners of property near a proposed sewage treatment plant, had standing to challenge the Secretary’s certification of a supplemental FEIR. The Court decided that they did not, because the certification did not violate any duty owed by the Secretary to the plaintiffs. No issue of timeliness was raised or decided in the case.
In the context of addressing the plaintiffs’ argument that if they lacked standing, an improper certification by the Secretary might be immune from judicial review, the Court in Enos discussed various types of actions that might be available to prevent environmental harm from a project that would proceed based on an improper FEIR certification. In considering the *381 possibilities, the Court reported the Secretary’s suggestion that “the plaintiffs may bring suit directly against the town [there the project proponent] under G.L.c. 214, §7A, alleging that the town’s improperly obtained FSEIR may constitute ‘damage caused or about to be caused,’ in violation of an environmental statute.” Id. at 142. Under that statute, the Court observed, “an action may lie to seek revocation of the approval of the FSEIR and the submission of a revised report.” Id.[2] The Court went on to report that “the Secretary suggests that the plaintiffs may be able to challenge the sufficiency of the FSEIR when the town applies for the project’s discharge permit from the Department [of Environmental Protection], a final approval required by the Clean Waters Act.” Id. The Court cited G.L.c. 21, §46A, which authorizes an action for judicial review of the issuance of a permit under that Act. Id.
Canton reads this language as indicating that the time limit under §62H would not begin to run until the issuance of a permit for activity that would cause it injury — that is, a permit for construction of the 1-95 off-ramp, or other road construction that would affect the Town’s traffic concerns — even though no such permit might be issued until long after the “first issuance of a permit” authorizing work on some other aspect of the proj ect. Under that reading, the time limit under §62H has still not begun to run. The discussion in Enos of possible alternative means of review may be susceptible of such a reading, but nothing in that decision purports to construe the limitations provision of §62H, nor does Canton offer any theoiy as to how its reading might be reconciled with the plain language of the statute.
In Sierra Club, 439 Mass. at 739, the plaintiff organization asserted claims under G.L.c. 214, §7A, c. 30, §61, and the Declaratoiy Judgment Act, challenging a proposed expansion of the Wachusett Mountain Ski Area. The Secretary had certified a supplemental FEIR, and the Department of Environmental Management had issued a finding under c. 30, §61, and had simultaneously issued approval to commence work on a portion of the project. Suit was filed within thirty days of that approval. On review, the Superior Court had concluded that the record did not support the certification and finding, and enjoined the Department from authorizing implementation of the project without certain revisions. On appeal, before addressing the merits, the Court considered the Department’s contention that the plaintiff lacked standing. The Court stated:
In Enos we said that the plaintiffs lacked standing to challenge the Secretaiy’s certification of a final supplemental environmental impact report (FSEIR) because at that stage no harm flows from the information gathering that MEPA is intended to generate. We also indicated, however, that “an action may lie to seek revocation of the approval of the FSEIR and the submission of a revised report” after the permit authorizing a project has been approved. Here, a permit for a portion of the project effectively was issued when the commissioner gave his approval to begin work on the ski lifts. Therefore the case was properly before the Superior Court.
439 Mass. at 745 (internal citations omitted). The Court went on to indicate that it would exercise its discretion to consider “questions concerning the adequacy of the SFEIR and the §61 findings as they relate to the trail work,” even though no permits had been issued for that work, because those issues had been addressed below, defendants did not argue that the issues were not ripe, and “they will be relitigated as other permits are issued if we do not address them now.” Id.
Canton reads this last statement as indicating that a challenger can — indeed, perhaps, must — wait for the issuance of a permit for the particular activity it alleges will cause it injury before bringing suit. On that theory, it argues, the limitations provision of §62H cannot mean what it says. This argument proves too much, since it would compel dismissal of this action for lack of standing. More to the point, perhaps, it ignores what actually happened in Sierra Club. There the plaintiff sued within thirty days of the first issuance of a permit, and the Court proceeded to consider issues relating to aspects of the project for which permits had not yet issued, furthering the statutory goal of expedition. That is exactly what could have happened here, if Canton had brought its action within the statutory limitations period, even though the permit that triggered the running of the limitations period was not one related to the issue of concern to Canton. Its failure to do so requires dismissal of this action.[3]
CONCLUSION AND ORDER
For the reasons stated, the Motion of Doherty Development Associates, d/b/a Cabot, Cabot and Forbes to Dismiss the Complaint for Lack of Jurisdiction and Failure to State a Claim is ALLOWED. It is hereby ORDERED that the complaint be dismissed as to all counts against all defendants.

CCF argues that if review of the FEIR is time-barred, then review of MassHighway’s §61 finding is as well, since the latter is based on the former. Plaintiff has not addressed this issue in its opposition, and conceded the point at argument.

Canton’s complaint does not invoke c. 214, §7A, and does not allege compliance with the prerequisites for suit under that statute.

ALthough only CCF has moved to dismiss, the Court’s conclusions compel dismissal of the entire action as to all defendants.