Nickerson, Gary A., J.
On April 9, 2008, the plaintiff, Ten Taxpayer Citizens Group, commenced this action against the defendants, Secretary Office of Environmental Affairs (“Secretary”) and Cape Wind Associates, LLC (“CWA”). The plaintiff seeks to challenge the Secretary’s issuance of a Final Environmental Impact Report Certificate for CWA’s proposed commercial wind energy facility pursuant to G.L.c. 30, §§61 and 62, G.L.c. 214, §7A, G.L.c. 231A. This matter came before this Court on the defendants’ motions to dismiss the plaintiffs First Amended Complaint pursuant to Mass.R.Civ.P. 12(b)(1) and Mass.R.Civ.P. 12(b)(6). For the reasons discussed below, the defendants’ motions to dismiss are ALLOWED.

BACKGROUND

The plaintiffs First Amended Complaint establishes the following facts. CWA is a Massachusetts limited liability company with its principal address in Boston. CWA is the proponent of a renewable energy wind power project, consisting of 130 wind turbine generators over 25 square miles of sub-tidal area located on Horseshoe Shoal in Nantucket Sound. The electricity generated from each wind turbine generator will be transmitted via submarine transmission cables to an electric service platform located within the wind turbine generator array in federal waters. The platform will transform and then transmit that electricity across both federal and state waters via approximately 12.5 miles of submarine transmission cables. Those submarine transmission cables will make landfall in the Town of Yarmouth, Massachusetts, where they will proceed under existing ways to connect with the existing electric transmission grid.
The plaintiff is a group of ten taxpayers organized pursuant to G.L.c. 214, §7A, each of whom “resides in Barnstable County and has great familiarity with the Horseshoe Shoal and Nantucket Sound and has economic, as well as environmental, interests in preserving the integrity of the seabed, water and airspace over the said Shoal.” Further, some members of the Ten Taxpayer Citizens Group are “direct abutters to New Hampshire Avenue, West Yarmouth, MA where [CWA’s] cable will be dug and laid, all within several hundred yards of the Lewis Bay landfall.”
On November 16, 2001, CWA initiated state environmental review of the project under MEPA by filing an Environmental Notification Form with the Secre-taiy of the Executive Office of Energy and Environmental Affairs. The Secretary issued a certificate on CWA’s Environmental Notification Form on April 22, 2002. There, the Secretary determined that the project is subject to MEPA review. At the same time, the Secretary stated, with respect to the jurisdiction of that review, that:
Because the proponent is not seeking financial assistance from the Commonwealth for the project, MEPA jurisdiction extends to those aspects of the *540 project that are within the subject matter of required or potentially required state permits and that have the potential to cause significant Damage to the Environment. In this case ... MEPA jurisdiction effectively extends to all aspects of the project that are within Massachusetts. The MEPA mandatory Environmental Impact Report threshold related to production of 100 or more [megawatts] of electriciiy does not apply to the project because the [wind turbine generators are] located outside of the Commonwealth in federal waters. The portion of the project subject to MEPA does not meet or exceed any mandatory Environmental Impact Report thresholds. Nonetheless I find that the project has potentially significant environmental impacts, and am thus exercising my discretion in requiring an Environmental Impact Report for the project.
The Secretary stated further that:
Because MEPA (like the Cape Cod Commission Act) is the product of state law, not federal law, MEPA review (and by extension the Cape Cod Commission review) applies only to those portions of the project that are located within Massachusetts, including its territorial waters (generally within three nautical miles of the low water mark of the shore). I note that the proposed [wind turbine generator] array is located outside of Massachusetts and, therefore, is not subject to state regulatory requirements. [The Coastal Zone Management Act] specifically delegates review authority over projects in federal waters to the Coastal Zone Management Office of the adjacent state, provided that the state has a federally approved Coastal Zone Management Plan.
Consistent with the Secretary’s certificate, CWA filed a Draft Environment Impact Report in November of 2004. On March 3, 2005, the Secretary issued a certificate on the Draft Environment Impact Report, concluding that CWA had adequately and properly complied with MEPA and its implementing regulations.
On February 15, 2007, CWA filed a Final Environment Impact Report. As required by MEPA, the Secretary published CWA’s Final Environment Impact Report in the Environmental Monitor on February 20, 2007. The plaintiff submitted comments on the project to the Secretary on March 21, 2007, during the public comment period. Despite the plaintiffs comments, the Secretary issued a certificate on the Final Environment Impact Report on March 29, 2007.
There, the Secretary reiterated his statement of limited jurisdiction, emphasizing that it was his job to review, minimize, and mitigate the impact of the portion of the project subject to MEPA jurisdiction: the electric transmission cable running through state waters to the mainland. In issuing the certificate, the Secretary concluded that CWA had adequately and properly complied with MEPA and its implementing regulations because it “provides a complete and definitive description and analysis of the jurisdictional portions of the project and its alternative, and contains an assessment of its potential environmental impacts and mitigation measures to enable state permitting agencies to understand the environmental consequences of their permit decisions.”
The plaintiff filed this action against the defendants on May 25, 2007 and thereafter, amended its complaint on September 27, 2007. Counts I, II, III, V, VI, VII, and VIII of the plaintiffs First Amended Complaint challenge the Secretary’s Final Environmental Impact Report Certificate for various deficiencies under MEPA, while Count IV challenges the Secretary’s statement of limited jurisdiction, specifically. In this action, the plaintiff seeks from this Court a declaratory judgment ordering the Secretary to strike his certificate and direct CWA to file a supplemental Final Environmental Impact Report, as well as costs, reasonable attorneys fees, and any other relief this Court deems appropriate. Before the Court are the defendants’ motions to dismiss the plaintiffs First Amended Complaint.

DISCUSSION

The defendants move to dismiss the plaintiffs First Amended complaint pursuant to Mass.R.Civ.P. 12(b) on the grounds that this Court lacks subject matter jurisdiction over the claims asserted therein, and that the various counts fail to state a claim upon which relief can be granted. A motion pursuant to Mass.R.Civ.P. 12(b)(1) challenges the court’s jurisdiction over the subject matter of the complaint. Because standing to bring an action is an issue of subject matter jurisdiction, a motion to dismiss under Mass.R.Civ.P. 12(b)(1) is an appropriate mechanism to challenge a plaintiffs standing. See Ginther v. Commissioner of Ins., 427 Mass. 319, 322 (1998). A motion brought under Mass.R.Civ.P. 12(b)(1), unsupported by affidavits, presents a facial attack on jurisdiction based solely on the allegations of the complaint, taken as true. Callahan v. First Congregational Church of Haverhill, 441 Mass. 699, 709 (2004).
Similarly, when evaluating the legal sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court accepts as true all of the factual allegations of the complaint, and draws all reasonable inferences from the complaint in favor of the plaintiff. Berish v. Bornstein, 437 Mass. 252, 267 (2002); Pontremoli v. Spaulding Rehabilitation Hosp., 51 Mass.App.Ct. 622, 624 (2001). To survive a motion to dismiss, however, a complaint must set forth the basis of the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-36 (2008) (quoting Bell Atl. Corp. v. Trombly, 127 S.Ct. 1955, 1964-65 (2007)). While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .” *541 Id. At the pleading stage, Mass.R.Civ.P. 12(b)(6) requires that the complaint set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief...” Id.
The defendants move to dismiss the plaintiffs First Amended Complaint in its entirety under Mass.R.Civ.P. 12(b)(6), arguing that MEPA does not establish a cause of action to challenge the adequacy of MEPA review. Indeed, it is well-established that MEPA does not create any right to judicial review or grant the Superior Court jurisdiction to review determinations by the Secretary. See Walpole v. Secretary of the Executive Office of Envt’l. Affairs, 405 Mass. 67, 70 (1989); Cummings v. Secretary of Envt'l Affairs, 402 Mass. 611, 613 (1988). MEPA merely establishes a process under which Environmental Impact Reports are prepared and submitted for review by interested agencies, as well as the public. Id. Final Environmental Impact Report determinations are made by the Secretary of Environmental Affairs, a disinterested public official with environmental expertise. Enos v. Secretary of Envt'l Affairs, 432 Mass. 132, 137 (2000). While the MEPA review process culminates with the Secretary’s certification of the Final Environmental Impact Report, this certification does not result in approval or disapproval of a project. Allen v. Boston Redevelopment Auth., 450 Mass. 242, 247 (2007). Instead, permitting agencies use the information gathered during the MEPA process to assess the project’s impact on the environment, to prevent or minimize any consequential damage, and ultimately to approve or disapprove a project. Id. Therefore, to challenge the Secretary’s certification concerning CWA’s Final Environmental Impact Report, the plaintiff must bring an action under the jurisdiction of some other statute. See Walpole v. Secretary of the Executive Office of Envt’l Affairs, 405 Mass. at 70; Cummings, 402 Mass. at 613. An action under the Ten Citizens Suit Statute, G.L.c. 214, §7A is an appropriate mechanism for a project proponent or other major player in the MEPA process to challenge the Secretary’s certificate on CWA’s Final Environment Impact Report, as is an action under the Declaratory Judgment Act, G.L.c. 231A. See Enos v. Secretary of Envt’l Affairs, 432 Mass. at 141; Villages Development Co. v. Secretary of the Executive Office of Envt’l. Affairs, 410 Mass. 100, 107-08 (1991); Walpole v. Secretary of the Executive Office of Envtl. Affairs, 405 Mass. at 71; Cummings v. Secretary of Envt’l. Affairs, 402 Mass. at 614; Boston Investments Ltd. v. Secretary of Envt’l Affairs, 35 Mass.App.Ct. 391, 395-96 (1993).
Having determined that MEPA does not establish a cause of action to challenge the adequacy of MEPA review, this Court turns to the plaintiffs actions under the Ten Citizens SuitStatute, G.L.c. 214, §7A. In order to maintain an action under G.L.c. 214, §7A, aplaintiff must allege that damage to the environment is occurring, or is about to occur. G.L.c. 214, §7A. Such damage must be imminent. Id. With respect to the plaintiffs action under G.L.c. 214, §7A, the defendants argue that the plaintiff has failed to state a claim for which relief can be granted under Mass.R.Civ.P. 12(b)(6), because the plaintiffs have not pled, much less demonstrated, that “damage to the environment is occurring or is about to occur” as a result of the MEPA process. This Court is in agreement. Not only has the plaintiff failed to state a claim for which relief can be granted under Mass.R.Civ.P. 12(b)(6), but the plaintiff lacks standing under Mass.R.Civ.P. 12(b)(1) to even challenge the Secretary’s certification of CWA’s Final Environmental Impact Report where no permit has issued because no harm flows from the mere gathering of information that MEPA generates. See Sierra Club v. Commissioner of the Dept. of Envt’l Mgmt., 439 Mass. at 75; Enos v. Secretary of Envt’l. Affairs, 432 Mass. at 139.
This Court next turns to the plaintiffs action under G.L.c. 231A. A pariy has standing under G.L.c. 231A when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred. Enos v. Secretary of Envtl. Affairs, 432 Mass. at 135. Therefore, in order to maintain an action under G.L.c. 231Athe members of the Ten Taxpayer Citizen Group must show that they have a specific injury within the zone of interests protected by MEPA. Id. It is not enough that the plaintiffs are injured by some act or omission by the Secretary; rather, they must also show that the Secretary violated some duty owed to them. Id. Accordingly, a general desire to further environmental protection is not sufficient to confer MEPA standing under G.L.c. 231A. Id. at 138-39. With respect to the plaintiffs action under G.L.c. 231A, the defendants argue that the plaintiffs lack standing to seek a declaratory judgment under Mass.R.Civ.P. 12(b)(1). As discussed above, the plaintiff is a group of ten taxpayers organized pursuant to G.L.c. 214, §7A, each of whom “resides in Barnstable County and has great familiarity with the Horseshoe Shoal and Nantucket Sound and has economic, as well as environmental, interests in preserving the integrity of the seabed, water and airspace over the said Shoal.” Further, according to the plaintiffs First Amended Complaint, some members of the Ten Taxpayer Citizens Group are “direct abutters to New Hampshire Avenue, West Yarmouth, MA where [CWA’s] cable will be dug and laid, all within several hundred yards of the Lewis Bay landfall.” Neither the plaintiffs interest in preserving the integrity of the seabed, water, and airspace over the Shoal, nor its members’ proximity to the where the cable will be dug and laid, amounts to an injury to a specific private property or legal interest from the Secretary’s issuance of a Final Environmental Impact Certificate for the project, or violation of a duty owed by the Secretary to it in particular. Accordingly, the plaintiff falls short of establishing the requisite standing to *542 maintain an action under G.L.c. 231A to challenge MEPA.
Finally, the defendants move to dismiss Count IV of the plaintiffs First Amended Complaint under Mass.R.Civ.P. 12(b)(6), arguing that the Secretary does not have authority to review those portions of the project located in federal waters. Therefore, the defendants argue, the Secretary properly limited the scope of CWA’s Final Environmental Impact Report to the transmission cables, the portion of the project within the jurisdiction of state permitting agencies. With respect to jurisdiction, MEPA provides:
If [an Environmental Impact Report] is required, the secretary with the cooperation of [the proponent] and [the agency from which a permit is required] shall . . . limit the scope of the [Environmental Impact Report] to those issues which by the nature and location of the project are likely to cause damage to the environment. The secretary shall determine the form content, level of detail and alternatives required for the [Environmental Impact Report]. In the case of a permit application to an agency from a private person for a project for which financial assistance is not sought the scope of said Environmental Impact Report and alternatives considered therein shall be limited to that part of the project which is within the subject matter of the permit. Any finding required by section sixty-one shall be limited to those matters which are within the scope of the [Environmental Impact Report], if any, required by this section.
G.L.c. 30, §62A. The MEPA regulations reaffirm this jurisdictional limitation, stating in relevant part:
MEPA jurisdiction is broad when a Proj ect is undertaken by an Agency or involves Financial Assistance. Broad, or full scope, jurisdiction means that the Scope, if an [Environmental Impact Report] is required, shall extend to all aspects of a Project that are likely, directly or indirectly, to cause Damage to the Environment. . .
MEPA jurisdiction is limited when a Project is undertaken by a Person and requires one or more Permits . . . but does not involve Financial Assistance. Limited, or subject matter, jurisdiction means that the Scope, if an [Environmental Impact Report is required, shall be limited to those aspects of the Project within the subject matter of any required Permit that are likely, directly or indirectly, to cause Damage to the Environment. Subject matter jurisdiction may be functionally equivalent to a full scope jurisdiction in the case of a Project, for example, requiring a Chapter 91 License . . . Subject matter jurisdiction may be limited to a particular structure, facility or activity and its direct and indirect environmental impacts.
301 Code Mass. Regs. §11.01(2)(a). Similarly, with respect to reviewing an Environmental Notification Form and preliminarily determining the scope of an Environmental Impact Report:
In the case of a Project undertaken by a Person that requires one of more Permits . . . but does not involve Financial Assistance, the Scope shall be limited to the direct and indirect potential environmental impacts from those aspects of the Project that are within the subject matter of any required Permit. . .
301 Code Mass. Regs. §11.06(9). MEPA and its implementing regulations make clear that the Secretary does not have authority to review those portions of the project located in federal waters. Any attempt by the plaintiff to assert that state laws are applicable and, therefore, should govern those portions of CWA’s project proposed for federal waters is unavailing. Therefore, the Secretary properly limited the scope of CWA’s Final Environmental Impact Report to the transmission cables, the portion of the project within the jurisdiction of state permitting agencies. Accordingly, Count IV is subject to dismissal, inasmuch as the plaintiff has failed to state a claim upon which relief can be granted.

ORDER

For the reasons discussed above, this Court ORDERS that the defendants’ motions to dismiss be ALLOWED and the plaintiffs First Amended Complaint be dismissed in its entirety.