Massachusetts Port Authority *v.* Clerk of the East Boston District Court.

━━━━━

MASSACHUSETTS PORT AUTHORITY *vs.* CLERK OF THE EAST BOSTON DISTRICT COURT & another.

Suffolk. January 7, 1966. — February 4, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Massachusetts Port Authority. Logan International Airport. Fine. Words,* "Toll."

The Massachusetts Port Authority existing under St. 1956, c. 465, as amended by St. 1958, c. 599, and not the city of Boston, is entitled to the fines, both those imposed and paid in criminal proceedings under § 23

---

and those collected under the noncriminal disposition procedure contained in G. L. c. 90, § 20C, for illegal motor vehicle parking at the Logan International Airport owned and operated by the Authority in Boston.

PETITION filed in the Supreme Judicial Court for the county of Suffolk on March 12, 1965.

The case was reserved and reported by *Spalding, J.*

*Donald R. Grant* for the petitioner.

*William H. Kerr* for the intervener City of Boston.

WILKINS, C.J.  This petition for a writ of mandamus by Massachusetts Port Authority, "a body politic and corporate" created by St. 1956, c. 465, § 2, is brought against the clerk of the East Boston District Court (G. L. c. 218, §§ 1, 8) to obtain an order that the latter pay over fines in his possession collected for illegal parking at Logan International Airport.  The city of Boston intervened as party respondent having the real adverse interest, and filed an answer seeking declaratory relief.  G. L. c. 231A, § 6.  The respondent clerk's answer sets up that he is merely a stakeholder.  The petition came before a single justice on a case stated and was reserved and reported by him without decision to the full court.

On February 17, 1959, the authority paid to the Treasurer and Receiver General the various sums specified in St. 1956, c. 465, § 5, and acquired title to, and succeeded to the control, operation and maintenance of the airport properties defined in St. 1956, c. 465, § 1 (b).

On June 14, 1962, the authority voted to promulgate, effective September 10, 1962, a set of rules and regulations for the airport which superseded those previously in force. These new rules and regulations were incorporated in and made part of the by-laws of the authority.  A penalty not to exceed $20 was fixed for a violation.  On January 10, 1963, the authority voted, in effect, that the procedure relative to the noncriminal disposition of parking violations contained in G. L. c. 90, § 20C (inserted by St. 1962, c. 786, §§ 6, 8), be adopted and made applicable to the airport. There were established fines of $1, $2, and $3 for violations.

The authority constructed at its expense and has since maintained and operated at the airport parking and storage areas, divided into separate parking spaces that are each capable of accommodating the parking or storage of a single vehicle and are each equipped with a parking meter. The principal means of enforcement has been in accordance with the procedures set forth in § 20C. In those instances in which a member of the State police has taken cognizance of a violation he has initiated those procedures by affixing to a motor vehicle one part of a tag. The tags have been printed at the expense of the authority. Many persons whose vehicles have been tagged have availed themselves of the provisions for noncriminal disposition set forth in § 20C, and have paid various fines to the respondent clerk. In those instances in which owners of vehicles have not paid fines within the twenty-one days permitted by § 20C, members of the State police have sworn out criminal complaints in the East Boston District Court, and summonses have been served by or at the request of the State police.

All the clerical and administrative work in the collection of fines under the noncriminal provisions of § 20C, and all the clerical work in preparation of criminal complaints and summonses have been performed by employees of the authority paid by it but who worked under the supervision and direction of the respondent clerk.

On or before the tenth day of February, 1963, and the tenth day of each month thereafter to and including February, 1965, the respondent clerk paid to the authority: (1) the net amount of the fines received by him during the preceding month from members of the public convicted on criminal complaints in the East Boston District Court; and (2) the total amount of fines received by him during the preceding calendar month under the noncriminal disposition provisions of § 20C. The aggregate amounts so paid during the period commencing February, 1963, and ending February, 1965, were, respectively $18,575 and $134,803 These are the fines as to which the city seeks a binding declaration in its answer.

On March 10, 1965, the authority demanded that the respondent clerk pay over the fines received in February, 1965, on criminal complaints amounting to $493, and on noncriminal dispositions totaling $4,476. These are the fines for which the authority seeks a writ of mandamus.[1]

The authority bases its right to the fines paid as the result of criminal prosecutions on § 23 of its enabling act, St. 1956, c. 465, as appearing in St. 1958, c. 599, § 11.[2] Section 23 in its unnumbered sixth paragraph provides: "Any person who uses any project and fails or refuses to pay the toll provided therefor shall be punished by a fine of not more than one hundred dollars *to be paid to the Authority* [italics supplied] or by imprisonment for not more than thirty days or both, and in addition thereto the Authority shall have a lien upon the vehicle driven by such person for the amount of such toll and may take and retain possession thereof until the amount of such toll and all charges in connection therewith shall have been paid."

On the other hand, the city denies that these fines were imposed under § 23, but asserts that they were "for by-law violations." We infer that this means under § 3, which reads: "The Authority is hereby authorized . . . (a) To adopt by-laws for the regulation of its affairs and the conduct of its business, and to fix penalties for the violation thereof; provided, however, that no penalty shall be in excess of one hundred dollars except as otherwise provided in section twenty-three."

The city argues that the only fines to be paid to the authority under the sixth paragraph of § 23 are fines imposed in prosecution of the distinct offence set forth therein, namely, using a project of the authority and failing or refusing to pay the toll provided for. It criticises the form

---

[1] We are told in the authority's brief that the question as to who is entitled to the $84,050 in parking fines paid over to the authority between June 10, 1959, and January 10, 1963, is the subject of an action in the Superior Court by the city against the authority.

[2] References hereafter to the enabling act as amended are references to St. 1956, c. 465, as amended by St. 1958, c. 599.

350 Mass. 195                                           199

Massachusetts Port Authority v. Clerk of the East Boston District Court.

of the complaint, which specifies that the offence took place on "an airport highway." The city also stresses that the clerk in the summons entitled the complaint, "A parking violation." The complaint charges that the person complained of "did then and there use a project of the Massachusetts Port Authority, to wit: the Logan International Airport, by parking a motor vehicle upon an airport highway and did fail to pay the toll provided therefor against the peace of said Commonwealth and the form of the statute in such case made and provided." The city's contention does not give adequate weight to this phraseology, which is couched in the wording of § 23. That the complaint was sworn out against the registered owner does not take it from this statutory context.

Similarly, the authority bases its right to the fines collected as a result of the noncriminal procedure upon § 23. This the city also disputes contending that § 23 provides for a distinct statutory offence and arguing that the fines were collected under the authority's rules and regulations, incorporated in its by-laws, and under G. L. c. 90, § 20C, inserted by St. 1962, c. 786, § 6, which by its terms is limited to "a violation of any provision of any rule, regulation, order, ordinance or by-law regulating the parking of motor vehicles . . .." Section 3 (i) of the enabling act, as amended, authorizes the authority "To fix and revise from time to time and charge and collect tolls, rates, fees, rentals and other charges for the use of any project under its control . . .." Section 3 (g) allows the authority to establish rules and regulations for the operation of the airport. Section 3 (a), *supra,* makes express reference to § 23. The fines collected under the noncriminal procedure cannot, in statutory origin, be distinguished from the fines collected as the result of criminal complaints under § 23. Since the authority would have been entitled to fines imposed by the court, it would not be consistent or reasonable to deprive the authority of the revenue of the fines collected under the shortened procedure the authority itself established to relieve the burden on the courts and the

200                                             350 Mass. 195

Massachusetts Port Authority v. Clerk of the East Boston District Court.

police and for the convenience of the public. *Commonwealth* v. *Marder,* 346 Mass. 408, 410-411, appeal dismissed sub nom. *Marder* v. *Massachusetts,* 377 U. S. 407.

The city lays stress on a narrow interpretation of the word "toll" in § 23 authorizing a penalty for "Any person who uses any project and fails or refuses to pay the toll provided therefor . . . ." It is claimed that a fine for parking is not a toll. Reference is made to that part of § 14, as amended, which reads, "The Authority is hereby authorized to fix, revise, charge and collect tolls, rates, fees, rentals and other charges for the use of each project . . . ." The reasoning asserted is that the sixth paragraph of § 23 mentions only "toll," and that if "toll" embraced "rates, fees, rentals and other charges," there would have been no need for any mention of them in § 14. The reliance on § 14 seems misplaced. The word "toll" in § 23 is not contended by the authority to embrace every source of revenue and need only be interpreted broadly enough to include funds from metered parking.

Section 14 allows the authority to collect "tolls" and "other charges for the use of each project." Section 1 (1) of the enabling act as originally enacted declares that "[t]he word 'project' shall mean the Mystic River bridge, the Sumner tunnel, the additional crossing, the airport properties [Logan airport and Hanscom field], the port properties [in Boston], or any additional facility financed or acquired under the provisions of this act, together with all property, rights, easements and interests pertaining thereto or acquired for the construction or the operation thereof." In the amendment of the enabling act by St. 1958, c. 599, § 1, this definition appears in § 1 (j) in the same form except that there has been omitted any reference to the Sumner Tunnel or the additional crossing. The authorization of the collection of a toll for the use of any "project," a word which by definition embraces airport properties, is surely conclusive against any contention that "toll" is confined in its application to the Mystic River Bridge or the tunnels. This is not an isolated example.

350 Mass. 195                                                      201

Massachusetts Port Authority *v.* Clerk of the East Boston District Court.

There are similar words elsewhere in the enabling act.[1]
Section 5 directly contemplates the collection of tolls at
the airport properties.[2]

No authority is adduced by the city in support of its as-
sertion that "according to the common and approved usage
of the language, a 'toll' is the tribute or custom paid for
the right to travel over a bridge or highway or through a
tunnel or canal." On the other hand, there are decisions
which show that the word is capable of a broad definition.
In *Sands* v. *Manistee River Improvement Co.* 123 U. S. 288,
294, it was said, "Tolls are the compensation for the use of
another's property, or of improvements made by him; and
their amount is determined by the cost of the property, or
of the improvements, and considerations of the return
which such values or expenditures should yield." See
*People ex rel. Curren, State's Atty.* v. *Schommer*, 392 Ill.
17, 22–23; *Ennis* v. *State Highway Commn. of Ind.* 231 Ind.
311, 323; *McKee* v. *Grand Rapids & Reed's Lake St. Ry.*
41 Mich. 274; *St. Louis Brewing Assn.* v. *St. Louis*, 140 Mo.
419, 429–430; *Lockwood* v. *Wood*, 6 Ad. & El. (N. S.) 31, 43;
1 Pollock & Maitland, History of English Law (2d ed.) 664.

In *Opinion of the Justices*, 297 Mass. 559, 565, relating
to a bill providing for parking meters on public ways, it
was said, "Requirement of payments from those parking
automobiles to meet the cost of installation, operation and
maintenance of the system and its general supervision
would be permissible. It is not necessarily an infringe-
ment of the rights of individuals in public ways to charge
a small fee for some legitimate special use to defray the
cost of the special service afforded. That would be noth-
ing more than the exaction of a toll which was familiar in
the early days of highways." This quotation the city's

---

[1] See, for example, § 3 (i), as amended, "To fix and revise from time to
time and charge and collect tolls, rates, fees, rentals and other charges for the
use of any project under its control"; § 23, as amended, "Each such project
shall . . . be policed and operated by such force of police, tolltakers and
other operating employees as the Authority may in its discretion employ."

[2] "[T]here shall be vested in the Authority the control, operation and main-
tenance of the airport properties and all rents, tolls, charges and revenues
pertaining thereto . . . ."

brief describes as a dictum, a somewhat novel term to apply to an advisory opinion. However that may be, the quotation undoubtedly expresses the views of the Justices, and those views are in no way affected by the fact that the statute thereafter enacted, G. L. c. 40, § 22A, used the word "fee" instead of "toll."

We hold to the view that the fines belong to the authority, a conclusion confirmed by an examination of the enabling act as a whole and by a consideration of its overall purpose. The authority is required to operate and maintain the airport (§ 5) and the other public "projects" under its control, and it must enlarge and improve them (§§ 3 [g], 8 [c], as amended). Its only revenues are those authorized by the enabling act. There is no power to tax or to pledge the credit of the Commonwealth or any of its political subdivisions (§ 11). It may issue bonds (§ 8 [c], as amended) payable solely from revenues (§ 10) and raise revenues by fixing, revising, and charging "tolls, rates, fees, rentals and other charges" (§§ 3 [i], 14, both as amended) for the use of the projects, including the airport (§ 5). These revenues are received as trust funds (§ 15, § 14 as amended) under a trust agreement (§ 12, as amended).

The paramount consideration is clear that the authority has the sole obligation of maintaining and operating the airport and of paying its costs. More specifically, it has incurred substantially all the expense for all police and administrative acts undertaken for the enforcement of proper parking. So far as the record shows, the authority has done all this without financial aid from the city or any outside source. The authority has no powers of taxation, and it would not be a liberal construction of the enabling act, as required in § 27, to hold that the not inconsiderable sums realized from fines must be surrendered to the city.

The authority suggests in its brief that the city's claim to the moneys already paid over to the authority and to those still in the hands of the clerk is based upon G. L. c. 280, § 2 (as amended through St. 1953, c. 319, § 37),

which provides in part, "A fine or forfeiture imposed by a district court shall, *except as otherwise provided* [italics supplied], be paid to the town where the crime or offence was committed."[1]   Although the city cites this provision in its brief, we do not observe that the city relies upon or discusses the provision in its brief.   The answer to such an argument, if made, would be that the Legislature has "otherwise provided" in St. 1956, c. 465, § 23, quoted *supra.*

The authority is entitled to all the fines whether paid as a result of criminal prosecution or under the noncriminal procedure.

On the petition for mandamus a writ is to issue commanding the respondent clerk to pay over to the petitioner (1) the amounts of the fines received by him during February, 1965, as described in paragraph 11 of the substitute petition and (2) the net amounts of all similar fines received by him beginning March 1, 1965, and thereafter. On the request for declaratory relief in the answer of the city a binding declaration is to be entered that the petitioner is entitled to retain for its own use the amounts of the fines paid to it by the respondent beginning in February, 1963, and continuing through February, 1965, as described in paragraph 10 of the substitute petition.

*So ordered.*

---

[1] Logan International Airport is in Boston.  *Commonwealth* v. *Biddiscombe,* 347 Mass. 427.