van Gestel, J.
This matter is before the Court on the motion of the defendant, Massachusetts Port Authority (“MassPort”), for summary judgment against the plaintiff, City Water Taxi Corp. (“CWT”), pursuant to Mass.R.Civ.P. Rule 56. The motion is a sequel to an earlier motion to dismiss decided by this Court, and with which decision full familiarity is presumed. See Memorandum and Order on Defendant’s Motion to Dismiss dated September 6, 2002. In its earlier Memorandum and Order, the Court said, in significant part, as follows:
MassPort grounds its motion to dismiss on two legal contentions: (1) there is no private right of action under G.L.c. 91; and (2) G.L.c. 93A does not apply to MassPort when it is acting pursuant to a legislative mandate.
The Court agrees with MassPort that there does not seem to be any basis for a private right of action under G.L.c. 91. That legal proposition notwithstanding, CWT’s complaint cannot be dismissed at this time. While CWT adverts to G.L.c. 91, its case is not brought pursuant thereto. Rather, CWT points to c. 91 as an indication that MassPort lacks jurisdiction to regulate activities at the Dock, at least to the extent and in the manner it is now doing. Thus, while it may ultimately become clear that this action is an attempt to enforce a private right under G.L.c. 91, such a proposition cannot be said to be the case on the generous reading of the complaint that must occur in response to a Rule 12(b)(6) motion.
Similarly, with regard to the claim pursuant to G.L.c. 93A, the Court agrees with MassPort that that statute does not apply to it when it is acting with a motivation grounded in a legislative mandate, as opposed to when it may be acting as an *495 entity engaged in trade or commerce for the purposes of G.L.c. 93A. All Seasons Services, Inc. v. Commissioner of Health & Hospitals of Boston, 416 Mass. 269, 271 (1993). What this Court must assess, however, is whether MassPort, under any conceivable set of facts that reasonably may be inferred from the complaint, was acting in trade or commerce when dealing with CWT.
Certainly MassPort, when regulating the use of the Dock by CWT and its competitors would seem to be acting in a non-commercial manner motivated by its legislative mandate. CWT, however, points to the fact that MassPort charges all users of the Dock a fee, and asserts that this turns the situation into a commercial activity. Given that MassPort has the legislative power to, and does extensively, collect fees — often called tolls — for the use of its facilities, the collection of fees from CWT may not be enough to push MassPort into the commercial arena here. But, again, under the generous reading of the complaint that is called for at this time, this Court does not have enough information before it to rule that no conceivable set of facts centering on the activities of MassPort at the Dock could turn what seems to be a legislative function into a commercial activity.
Now, applying the standards for assessing a Rule 56 motion — which are quite different from the “generous principles” Courts must apply to the arguments of a nonmoving party facing a motion to dismiss, see Connerty v. Metropolitan District Commission, 398 Mass. 140, 143 (1986) — this Court must review the issues left open in its previous decision. Broadly stated, those issues are: (1) does MassPort have authority to exercise control over the Logan Dock; and (2) is MassPort, in exercising that control, particularly in charging fees for the use thereof, acting other than in a non-commercial manner motivated by its legislative mandate?

BACKGROUND

It is not disputed that MassPort, in its control and management of the Logan Dock treats the plaintiff, CWT, differently from its competitor, the Airport Water Shuttle (“AWS”). The difference being primarily the fact that AWS, like a bus, may tie its vessels up at the Logan Dock while awaiting its next regularly scheduled run to Rowe’s Wharf, while CWT, like a taxi, must anchor or prowl offshore and only come to the Dock to pick up or drop off a fare. Nor is it disputed that MassPort charges each of CWT and AWS a fee, the same for each, currently at 75 cents for each passenger carried.
In addition to the facts recited in this Court’s earlier Memorandum on MassPort’s motion to dismiss, the foregoing are the only significant facts that are controlling on the legal issues to be decided.
Significantly, CWT, on page 3 of its opposition to the present motion, states: “While some discovery has been conducted, no new facts, no new evidence, has come to light.”

DISCUSSION

Summary judgment is granted where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). An adverse party — like CWT — however, may not rest upon the mere allegations or denials in its pleadings, but its response, by affidavits or as otherwise provided in Rule 56, must set forth that there is a genuine issue for trial. Mass.R.Civ.Rule 56(e).

Chapter 91

Nothing has been presented to the Court demonstrating that, as a matter of law, there is a private right of action available to CWT under G.L.c. 91. This is a legal issue for the Court to decide, not a factual question to be resolved after taking evidence. At best, CWT must show that there is something in c. 91 that divests MassPort of its authority to regulate the use of the Logan Dock. CWT has not done so by pointing to G.L.c. 91, Sec. 10C, and it has not pointed anywhere else.
Additionally, MassPort’s Enabling Act grants it broad authority to establish rules and regulations regarding the use of any port properties or projects relating to Logan Airport. G.L.c. 91 App., Sec. l-3(g) (authorizing MassPort to “operate the projects under its control, and to establish rules and regulations for the use of any such project”). The Logan Dock, located as it is at Logan Airport, falls within the definitions of both a “port property” and a “project” under MassPort’s control. See G.L.c. 91 App., secs. 1 -1 (i) and ())•
The MassPort Enabling Act also authorizes it “to contract with any person . . . desiring the use of any part of a project. . . and to fix the terms, conditions, rents and rates or charges for such use.” G.L.c. 91 App., Sec. 1-14.
The provisions of the Enabling Act are to be liberally construed to effect the purposes of the Act, G.L.c. 91 App., Sec. 1-27. Significantly, all other general or special laws that are inconsistent with the MassPort Enabling Act are “inapplicable to the provisions” of the Enabling Act. G.L.c. 91 App., Sec. 1-29.
Consequently, this Court rules that there is nothing in G.L.c. 91 that purports to, or that legally could, divest MassPort of the right to manage and control the Logan Dock by establishing rules and regulations for its use, and by charging a fee therefor.

*496
Chapter 93A

As this Court stated in its September 6, 2002 Memorandum, G.L.c. 93A does not apply to MassPort when it is acting with a motivation grounded in a legislative mandate, as opposed to when it may be acting as an entity engaged in “trade or commerce" as those words are used in the statute. In its earlier Memorandum, the Court, applied in CWT’s favor the very generous principles called for when deciding a motion to dismiss. Now, however, CWT has had the benefit of discovery of its choice, and the generous principles no longer apply. CWT must come forward with some facts demonstrating that MassPort, by charging a fee of 75 cents per passenger for use of the Logan Dock, is not acting pursuant to its legislative mandate. CWT has not done so.
MassPort charges fees and tolls to any number of different private users of the facilities under its control. This applies to airlines and pilots using Logan Airport and Hanscom Field; and truckers, bus operators and passenger car drivers using the Tobin Bridge; and it should apply equally as well to CWT and AWS using the Logan Dock.[1] This, however, does not take MassPort out of its legislative function and convert its actions to trade and commerce as that phrase is used in G.L.c. 93A. Many governmental agencies — even branches of government like the judiciary — charge fees in connection with their operations and are not, for that reason alone, considered to be acting in trade or commerce.
Since there is nothing in the summary judgment motion record that factually, or legally, establishes that MassPort is acting in trade or commerce insofar as its regulation and control of the Logan Dock, G.L.c. 93A does not apply. Without G.L.c. 93A, CWT has no case.

ORDER

For the foregoing reasons, the defendant’s motion for summary judgment is ALLOWED and judgment shall enter declaring that nothing in G.L.c. 91 divests the Massachusetts Port Authority from the rights to manage and operate the Logan Dock pursuant to the authority in its Enabling Act, G.L.c. 91 App., and otherwise dismissing this case, with prejudice and costs.

The “tolls” even include the fees from metered parking at Logan Airport and the fines imposed on violators in the local District Court. Massachusetts Port Authority v. Clerk of the East Boston District Court, 350 Mass. 195, 201-02 (1966).