## Town of Hull *vs.* Massachusetts Port Authority & another.[1]

Plymouth. January 6, 2004. - April 21, 2004.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Sosman, JJ.

*Massachusetts Port Authority. Environment,* Environmental impact report. *Limitations, Statute of. Municipal Corporation,* Nuisance. *Nuisance.*

Discussion of the general statutory scheme of the Massachusetts Environmental Policy Act, G. L. c. 30, §§ 61-62H. [513-514]

This court concluded that information and allegations presented to the Secretary of the Executive Office of Environmental Affairs during the public comment portion of the Massachusetts Environmental Policy Act process of reviewing a challenge to an environmental impact report did not trigger G. L. c. 30, § 62H, fourth par., which provides an exception to the statute of limitations for bringing such challenges where the project proponent has knowingly concealed a material fact or knowingly submitted false information. [516-517]

This court concluded that a town could not bring a public nuisance claim against the Massachusetts Port Authority (Massport) based on airplane noise, where the legislature sanctioned Massport's operation of Logan International Airport, and Massport had not exceeded its statutory authority or violated any governing regulations [517-519]; likewise, the town could not bring a private nuisance action against Massport, because Massport's behavior did not implicate a property right of the town [519-520].

Civil action commenced in the Superior Court Department on October 15, 2001.

The case was heard by *Charles J. Hely,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*William B. Golden (Jonathan Braverman & James B. Lampke* with him) for the plaintiff.

*Steven W. Kasten (Mark W. Pearlstein* with him) for the defendants.

[1]The executive director of the Massachusetts Port Authority.

IRELAND, J. This case requires us to interpret, for the first time, the provision set forth in G. L. c. 30, § 62H, fourth par., that creates an exception to the time limit for challenges to environmental impact reports if the project proponent has "knowingly concealed a material fact or knowingly submitted false information." The town of Hull (town) commenced an action seeking, inter alia, a judgment declaring that the Massachusetts Port Authority (Massport) failed to comply with the Massachusetts Environmental Policy Act, G. L. c. 30, §§ 61-62H (MEPA), in its environmental impact report (EIR) concerning its Logan airside improvements planning project (airport project), and seeking an order that "Massport's negligent operation of Logan International Airport constitutes a public nuisance."[2] The action was not commenced within the applicable time limits, and the town invoked G. L. c. 30, § 62H, fourth par., to overcome that time bar. A Superior Court judge granted Massport's motion for summary judgment and denied the town's motion for partial summary judgment.[3] The town appealed. We granted Massport's application for direct appellate review.

On appeal, the town argues that the judge erred in granting summary judgment in favor of Massport, because he decided issues of fact in considering the town's claim that Massport knowingly concealed material facts or submitted false information (G. L. c. 30, § 62H, fourth par.) in its EIR. The town also asserts that the judge erred, as a matter of law, in determining that the town could not bring a nuisance claim against Massport. Because we conclude that, in the circumstances of this case, (1) the concealment or false information provision set forth in G. L. c. 30, § 62H, fourth par., does not apply; and (2) the town may not bring a nuisance claim against Massport, because the Legislature has sanctioned the activity, we affirm the judgment of the Superior Court.

*Facts and procedural background.* We recite the facts with all inferences drawn in favor of the town, as the nonmoving

---

[2]The town also alleged deceit and requested an order in the nature of mandamus. The judge granted Massport's motion to dismiss on these counts.

[3]The town is not appealing from the denial of its motion for partial summary judgment.

party, *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983), reserving certain details for our discussion. "An order granting summary judgment will be upheld if the judge ruled on undisputed material facts and his rulings were correct as a matter of law." *Garweth Corp.* v. *Boston Edison Co.*, 415 Mass. 303, 304 (1993), and cases cited.

On July 31, 1995, in keeping with the requirements of Federal and State law, Massport filed an environmental notification form (ENF) with the Secretary of the Executive Office of Environmental Affairs (Secretary) that set forth the airport project, which was its plan to deal with airport delay at Logan International Airport (Logan).[4] The airport project proposal included the construction of a new runway (runway 14-32), taxiway improvements, and as suggested by the Federal Aviation Administration (FAA), a reduction in the runway approach minimum altitude requirements for aircraft.[5]

On November 22, 1995, the Secretary issued a certificate on the ENF pursuant to § 62A of MEPA, determining that the airport project required an EIR and describing the issues to be addressed therein. The Secretary determined that Massport had to evaluate each alternative set forth in the ENF to compare, in part, the impact of the airport project on air quality and noise.

Massport filed its draft environmental impact report (DEIR) in February, 1999. In the DEIR, four alternatives were analyzed:

---

[4]The airport project began when Massport evaluated earlier Federal Aviation Administration (FAA) airport capacity studies and the FAA's decision to support certain recommendations in those studies. The FAA published its notice of intent to prepare an environmental impact study (EIS) on August 22, 1995. The FAA's approval process is separate from the State process. The FAA reviews all airport expansion projects under the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 et seq. (2000). However, State and Federal regulations encourage the filing of joint environmental review documents. See G. L. c. 30, § 62G; 40 C.F.R. § 1506.2(c) (2004); *Communities Against Runway Expansion, Inc.* v. *Federal Aviation Admin.*, 355 F.3d 678, 682, 687 (D.C. Cir. 2004).

Moreover, the FAA controls all flight patterns in the United States. 49 U.S.C. § 40103(b) (2000). As discussed *infra*, the FAA also sets the standard for noise levels. In this opinion, we will note relevant parts of the FAA's review process.

[5]In this case, Massport and the FAA jointly chose the improvements that became the focus of the draft EIR (DEIR) and final EIR (FEIR).

(1) runway 14-32, taxiway improvements, reduced approach minimum altitudes for certain runways, and peak period pricing[6]; (2) all actions contained in the first alternative except runway 14-32; (3) only reduced approach minimum altitudes for certain runways, and peak period pricing; and (4) no action. In its DEIR, Massport identified a modified version of the first alternative (i.e., all action except peak period pricing) as its "preferred" alternative.

On May 7, 1999, the Secretary issued a certificate on the DEIR, determining that it complied with MEPA and MEPA regulations (301 Code of Mass. Regs. §§ 11.00 [1998]). However, the Secretary also required Massport to address a number of issues in its final EIR (FEIR). Public notice of Massport's FEIR was made on May 9, 2001. The FEIR stated that using the preferred alternative would result in a reduction in noise exposure and improved air quality.

On June 6, 2001, the town submitted to the Secretary a report entitled "Errors and Omissions, Massport's flawed SDEIS/FEIR"[7,8] (town's report) in response to the FEIR. On June 15, 2001, after staff review of the town's report and other extensive public comment, the Secretary issued a certificate on the FEIR, which stated that it complied with MEPA and the relevant regulations.[9] The Secretary noted that the airport project generated "an enormous volume of public comments" and that members of his staff met with town officials, among others.

---

[6]Peak period pricing is an imposition of a landing fee during peak hours.

[7]This report was submitted jointly by the town and the communities of Cohasset, Everett, Hingham, Somerville, and Winthrop.

[8]SDEIS refers to a supplemental draft EIS that the FAA decided to prepare to address certain other issues.

[9]The Secretary's certificate called for Massport to institute mitigation measures, including working on an air quality initiative and a peak period pricing alternative. In addition, the FAA's approval of the SDEIS/FEIR called for mitigation measures, including restrictions on the use of runway 14-32.

The FAA approved the airport project on August 2, 2002, deferring decision on the taxiway. This approval became the subject of a lawsuit, *Communities Against Runway Expansion, Inc.* v. *Federal Aviation Admin.*, 355 F.3d 678 (D.C. Cir. 2004), alleging, inter alia, that the FAA's approval of the airport project violated NEPA. Massport and the city of Boston intervened. The court rejected all of the plaintiffs' claims.

Subsequently, Massport adopted findings relative to the airport project, pursuant to § 61 of MEPA.[10]

Under § 62H of MEPA, a party has 120 days from the time it has notice of availability of the FEIR (in this case, May 9, 2001) to commence an action alleging that the FEIR failed to comply with §§ 62-62G of MEPA. However, § 62H, fourth par., contains what we shall refer to as the "concealment" exception, which states that if "an agency or person proposing a project has knowingly concealed a material fact or knowingly submitted false information," the time limitation does not apply.

The October 15, 2001, action the town filed was past the statutory deadline. In the complaint, the town requested a declaratory judgment (G. L. c. 231A) to determine the parties' rights, duty, status, and legal relations pursuant to § 61 of MEPA. The town utilized the concealment exception in § 62H, fourth par., alleging that Massport failed to disclose material facts and knowingly submitted false, misleading, and deceptive information in its ENF, DEIR, FEIR, and findings, thus allowing Massport to avoid its obligations to provide soundproofing to many homes and businesses, including Hull High School, and to "minimize damage to the environment" under § 61 of MEPA.

Although the judge denied Massport's motion to dismiss the allegations in the town's complaint on the ground that it failed to meet the statutory deadline pursuant to G. L. c. 30, § 62H (noting that the town had shown enough to allow it to invoke the concealment exception, because the town had alleged fraud with sufficient particularity pursuant to Mass. R. Civ. P. 9 [b], 365 Mass. 751 [1974]), he later granted Massport's motion for summary judgment, the subject of this appeal.

---

[10]Runway 14-32 has been the subject of other litigation. In 1976, the Superior Court issued an injunction prohibiting Massport from constructing runway 14-32. In 2003, the court amended the injunction by vacating the ban on the construction of runway 14-32, but requiring Massport to construct and operate it in accordance with the conditions set forth in the Secretary's June 15, 2001, certificate and the FAA's August 2, 2002, record of decision. See *Massachusetts Port Auth. vs. Boston*, Suffolk Superior Court No. 01-2731 (Nov. 18, 2003). See also *Secretary of Envtl. Affairs* v. *Massachusetts Port Auth.*, 366 Mass. 755 (1975) (affirming 1974 injunction in same case); *Massachusetts Port Auth. vs. Boston*, Suffolk Superior Court No. 01-2731 (Nov. 18, 2003) (dismissing counterclaim challenging Massport's FEIR).

*Discussion.*

1. *MEPA.*

a. *General statutory scheme.* In interpreting the concealment exception contained in § 62H, fourth par., of MEPA, we first consider the concealment exception in the context of MEPA's legislative purpose and administrative scheme, discussed in *Enos* v. *Secretary of Envtl. Affairs*, 432 Mass. 132, 136-142 (2000). See *Sierra Club* v. *Commissioner of the Dep't of Envtl. Mgt.*, 439 Mass. 738 (2003); *Cummings* v. *Secretary of Envtl. Affairs*, 402 Mass. 611 (1988). General Laws c. 30, § 61, establishes the official policy of environmental protection for the Commonwealth, and §§ 62A-62H establish the process by which the "potential environmental impact of certain projects" is considered. *Enos* v. *Secretary of Envtl. Affairs, supra* at 136. General Laws c. 30, § 62C, requires the Secretary to issue public notice of "[a]ny environmental impact report." Section 62C also states that "[t]here shall be a public and agency review period of thirty days from the notice of availability of any draft or final report . . . ."

General Laws c. 30, § 62H, allows an agency or person to "commence an action" provided that (1) notice of intention to file an action is timely given; (2) the action is commenced within 120 days "after the issuance of notice of the availability of [the FEIR]"; and (3) "the matter complained of was raised at the appropriate point in the administrative review procedures [unless the matter] [a] is material and [] it was *not reasonably possible with due diligence to have raised it during such procedures* or [b] the matter sought to be raised is of critical importance to the environmental impact of the project" (emphasis added).

As discussed, § 62H, fourth par., contains a concealment exception whereby, if a court determines that there was a knowing concealment of a material fact or submission of false information, "*limits on the* manner and *time* in which actions . . . may be commenced *shall not apply* and the [Secretary] may require the preparation and review of such forms and reports as may be necessary to correct any deficient form or report" (emphasis added).

In the *Enos* case, the court noted that the Legislature revised

MEPA, by St. 1977, c. 947, to expedite the approval process and to delegate responsibility for supervision of the review process to "a disinterested public official with expertise in environmental matters." *Id.* at 137, quoting *Cummings* v. *Secretary of Envtl. Affairs, supra* at 617.

b. *The town's allegations.* In granting Massport's motion for summary judgment, the judge analyzed the specifics of several of the allegations the town made that Massport either had knowingly concealed information or submitted false information in its various submissions to the Secretary.[11] Such analysis was unnecessary because we conclude that, in the circumstances of this case, where concealment and false submission allegations were raised by the town during the Secretary's review process and thus were already known to the town, the concealment exception to § 62H, fourth par., cannot be used to extend the time period in which the town may commence an action to challenge the FEIR.

In essence, all of the allegations contained in the town's complaint, as well as the support for the allegations contained in the affidavits submitted by the town, were presented to the Secretary for his consideration before he issued the certificate for the FEIR.[12] As noted above, the Secretary gave notice of the FEIR on May 9, 2001. The report the town submitted to the

---

[11]In its brief, the town states that its focus on appeal is on only two issues, air pollution and noise, where, the town alleges, the judge erroneously drew inferences in favor of Massport.

[12]Some of the allegations contained in paragraph 24 of the complaint did not allege concealment or false information, but merely stated that Massport "failed to consider" alternatives. Part of the request for declaratory judgment included an allegation that Massport failed to follow the Secretary's certificate when making its § 61 findings. In addition, some of the statements in the affidavits the town submitted also do not allege concealment. Given our holding in this case, we need not address each and every paragraph or subparagraph in either the town's complaint or the affidavits to determine whether concealment is alleged.

In addition, we decline to consider the arguments made by the parties that either refer to documents that are not part of the record submitted to this court or make assertions without reference to the appropriate pages in the record. See *Custody of Kali,* 439 Mass. 834, 838 (2003), quoting Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975) (where party did not cite to "parts of record relied on," court refused to consider claim because it did not rise to the level of acceptable appellate argument).

Secretary on June 6, 2001, was approximately 400 pages.[13] The report's cover page and cover letter refer to the "[u]se of false and deceptive information," "[i]nadequate analysis," and "inadequacies." The first sentence of the executive summary states that "Massport failed to include material facts, concealed material facts and presented misleading and deceptive information in violation of MEPA and NEPA legal requirements."

In its report's introduction and executive summary, the town presents an overview of the allegedly specific "inadequacies" of the FEIR, covering approximately four single-spaced pages.[14] Part of the list became the body of the town's complaint. Some "inadequacies" were presented verbatim in the complaint. Others expanded on the allegations made in the report.[15] However, every allegation contained in paragraph 24 of the complaint was presented in the report. Indeed, the report claimed a larger number of allegations than were subsequently contained in the complaint.[16]

The affidavits the town submitted add nothing to its allegation of concealment because, in substance (and sometimes verbatim), the allegations set forth in those affidavits also were

[13]As discussed, raising issues with the Secretary is one of the conditions for bringing a lawsuit under § 62H.

The town submitted a shorter report to Masssport's executive director on June 14, 2001, asking Massport to "immediately withdraw" the FEIR.

[14]The report's conclusion states that the FEIR is "incomplete because the proposal has either failed to include or has concealed some material facts[,] has included false, misleading and deceptive information[,] failed to fulfill the requirements of [the relevant State regulations] because there is no factual baseline and no comparative analysis [and] does not respond adequately to [the Secretary's and FAA's certificates]."

[15]For example, the report's statement that "Massport has failed to disclose minimum landing requirements for regional jets as set forth in airline specific operating manuals" became, in paragraph 24 (e) of the complaint, "Massport failed to disclose minimum landing requirements for regional jets as set forth in airline specific operating manuals. Each airline provides regional jet pilots with specific operating manuals which set forth minimum landing requirements for each aircraft. Since pilots have responsibility for the safety of their passengers, they can decide that a runway is too short to use if it does not meet the minimum landing requirements as set forth in these manuals, even if the runway meets the aircraft manufacturers [*sic*] minimum requirements."

[16]For example, one of the subcategories contained in the report and absent from the complaint was "Preferential Runway Advisory System."

in the town's report.[17] The town has pointed to nothing else in the record that supports an allegation of concealment of any fact or submission of false data that was not presented in the report.[18]

c. *Section 62H, fourth par.* We assume, without deciding, that the allegations the town made in its complaint would form an adequate basis for a timely filed action pursuant to § 62H, first and second pars. However, in these circumstances, the allegations cannot be the basis for invoking the concealment exception of § 62H, fourth par. We conclude that whatever else knowing concealment of a material fact or submission of false information may mean under § 62H, fourth par., it cannot encompass information and allegations presented to the Secretary during the public comment portion of the MEPA review process, § 62C. There are several reasons for our conclusion. The plain language of § 62H, fourth par., offers the following remedy if a court finds such concealment: "the [Secretary] may require the preparation and review of such forms or reports as may be necessary to correct any deficient form or report." Given this language, it is illogical to allow a party that has already brought allegations of concealment and false submissions to the attention of the Secretary to invoke a statutory provision that offers as a remedy, in essence, bringing the allegations to the attention of the Secretary for consideration and action.[19] Where, as here, an issue has already been raised before the Secretary during the proceedings, any party seeking to challenge the FEIR on that ground must bring a timely challenge. It would defeat the very purpose of the statute of limitations contained in § 62H, second par., if a party could

[17]Also telling are the town's answers to interrogatories. Asked, in essence, what evidence the town had for the allegations in the complaint of concealment and submission of false information, the town, after stating that Massport had not yet turned over all documents, pointed to the information contained in its report.

[18]Moreover, in his June 15, 2001, certificate, the Secretary stated that previous comments noted that the models used to measure noise levels appear to underestimate those levels, a concern expressed in the town's report and later expressed in an affidavit submitted on behalf of the town.

[19]At oral argument the town's counsel acknowledged that the remedy for the town's action concerning MEPA would be to bring the matter to the Secretary's attention.

extend the limitations period by claiming "concealment" of something that party already knew about and had brought to the Secretary's attention during the proceedings. See *Cummings* v. *Secretary of Envtl. Affairs*, 402 Mass. 611, 613 (1988). Finally, it would undermine the express purpose of the statute, "to immediately expedite environmental approvals." *Enos* v. *Secretary of Envtl. Affairs*, 432 Mass. 132, 137 (2000), quoting preamble to St. 1977, c. 947. Accordingly, we affirm the judge's granting of summary judgment in favor of Massport on this issue, albeit on different grounds.

2. *Nuisance.*

a. *Public nuisance.* In his memorandum of decision on the motions for summary judgment, the judge found that the town presented substantial evidence of damages caused by current airplane noise at Hull High School. The judge concluded, however, that, as a matter of law, the town cannot impose public nuisance liability on a State government entity such as Massport unless it is able to show that Massport exceeded its governmental authority or violated applicable regulations.

"A nuisance is public when it interferes with the exercise of a public right by directly encroaching on public property or by causing common injury." *Connerty* v. *Metropolitan Dist. Comm'n*, 398 Mass. 140, 148 (1986) ("remedy for a public nuisance must be sought by public authorities"). See *Wesson* v. *Washburn Iron Co.*, 13 Allen 95, 103 (1866) (public nuisance remedied by public prosecution).

Principles articulated in our case law support our conclusion that the town may not, in these circumstances, bring a public nuisance claim against Massport. In *Connerty* v. *Metropolitan Dist. Comm'n, supra,* a private individual sued the Metropolitan District Commission (MDC) for public nuisance, claiming that its discharge of raw sewage that temporarily closed down shellfish flats harmed the plaintiff, a master clam digger. At the time, the MDC, an agency of the Commonwealth, was charged with construction, maintenance, and operation of "a system of sewage disposal." *Id.* at 141. The court held that the plaintiff could not recover under public nuisance because "[i]n no case

. . . has recovery in public nuisance been allowed against any public entity." *Id.* at 150.

Although dealing with an action for private nuisance, *Hub Theatres, Inc.* v. *Massachusetts Port Auth.*, 370 Mass. 153, 155-156, cert. denied, 429 U.S. 891 (1976), addressed the operation of Logan. The plaintiffs operated a drive-in theater, located approximately 2,500 feet from Logan. They alleged that the low-flying airplanes caused vibrations and emitted fumes and noise, creating a total interference with the theatre's operations. The court affirmed judgment for Massport, noting that, within certain limits, "[i]t is a principle of long standing . . . that 'when the Legislature directs or allows that to be done which would otherwise be a nuisance, it will be valid, upon the ground that the Legislature is ordinarily the proper judge of what the public good requires.' " *Id.* at 155, quoting *Sawyer* v. *Davis*, 136 Mass. 239, 241-242 (1884), and cases cited. See *Smith* v. *New England Aircraft Co.*, 270 Mass. 511, 523 (1930) ("Legislative sanction makes that lawful which otherwise might be a nuisance").

In this case, the town alleges, in essence, that the legislatively sanctioned operation of the airport has created a public nuisance because of noise levels.[20] Massport was created by statute, St. 1956, c. 465, § 2, to perform an essential governmental function. In addition, similar to the MDC in the *Connerty* case, Massport is authorized to operate, extend, and improve the airport and the connecting tunnel and bridges. St. 1956, c. 465, §§ 1 (*a*), 3 (*g*), 5. These and other powers the statute confers on Massport "are to be construed liberally." *Loschi* v. *Massachusetts Port Auth.*, 354 Mass. 53, 54 (1968), citing *Massachusetts Port Auth.* v. *Clerk of the E. Boston Dist. Court*, 350 Mass. 195, 202 (1966). Moreover, Massport's operations and any rules and regulations it promulgates are subject to the jurisdiction of the FAA, which controls flight paths and sets the standard for noise levels. See 49 U.S.C. §§ 40103, 44715,

---

[20]The town's complaint also alleges that the construction of the new runway will cause noise and air pollution in violation of art. 97 of the Amendments to the Massachusetts Constitution. This issue was not argued on appeal, and therefore, we do not consider it.

47101(c), 47501 et seq. (2000)[21]; St. 1956, c. 465, § 3; St. 1956, c. 45, § 3A, inserted by St. 1979, c. 709. Here the town makes no allegation that Massport has exceeded its statutory authority or violated any of the extensive FAA regulations that govern the operation of Logan. Given the fact that the Legislature established Massport to operate the airport and that the FAA has jurisdiction over flight paths and noise, we see no need to disturb the principles set forth in the *Connerty* and *Hub Theatres* cases, particularly concerning the Legislature's right to determine what is in the public interest. We conclude that the town may not maintain an action against Massport for public nuisance.

b. *Private nuisance.* A private nuisance is "the remedy for an invasion of a *property right*" (emphasis added). *Connerty* v. *Metropolitan Dist. Comm'n, supra* at 147. See *Morash & Sons* v. *Commonwealth*, 363 Mass. 612, 619 (1973) (private nuisance claim against Commonwealth where storage of road salt polluted plaintiff's wells and corroded its pipes). Relying on *Hub Theatres, Inc.* v. *Massachusetts Port Auth., supra* at 156 (legislatively sanctioned business activity not nuisance unless activity was negligent, unreasonable, or unnecessary), the town argues that the judge erroneously analyzed private nuisance only on a negligence theory, whereas it presented evidence to show that Massport engaged in conduct that unreasonably or unnecessarily caused harm to the town.[22] The town's theories of unreasonable conduct on the part of Massport are that Massport refused reasonably to acknowledge or investigate the adverse impact of airport operations on the town, failed to assist the town in soundproofing the high school, failed to meet with residents and civic leaders to discuss the adverse impact caused by the airport's operation, and obstructed the town's effort to change flight paths. Although this behavior may, from the town's perspective, be frustrating, that behavior does not

---

[21]See note 4, *supra*. There are limitations on an individual's right to recover damages due to noise. See 49 U.S.C. § 47506 (2000).

[22]Because the judge analyzed the private nuisance issue, we address it. Massport claims that the town did not argue private nuisance below and is therefore precluded from arguing it before this court. Massport did not provide the court with the record of what was argued below, and we cannot decide the appeal on a ground that is not properly documented in the record before us. See *Adoption of Kali*, 439 Mass. 834, 838 (2003).

implicate a property right of the town. Therefore, the judge properly allowed Massport's motion for summary judgment based on private nuisance.[23]

*Judgment affirmed.*

---

[23]Moreover, even if the town's allegations pertained to a property right, *Hub Theatres, Inc.* v. *Massachusetts Port Auth.*, 370 Mass. 153, 156 (1976), does not assist the town. In the *Hub Theatres* case the court explicitly stated that private nuisance could be brought against legislatively sanctioned business activity, if the "activities" were negligent, unreasonable, or unnecessary. Whatever else it may be, the conduct in which the town alleges Massport engaged in is not a "business activity" within the meaning of the *Hub Theatres* case.